People of the State of Illinois, Plaintiff-Appellee, v.
Daniel J. Cunningham, Defendant-Appellant.

Gen. No. 65–46.

Third District.

July 22, 1966.

Isador I. Katz, of Rock Island, for appellant.

Richard Stengel, State's Attorney, of Rock Island, for appellee.

ALLOY, J.

Daniel J. Cunningham, defendant in this cause, was prosecuted for Attempt to Commit the Offense of Murder. This cause was tried before a jury which returned a verdict of guilty. The court denied a motion for new trial and also denied a petition for probation. Defendant was sentenced by the court to a term of not less than 10 nor more than 20 years.

On appeal in this court, defendant asserts that the Trial Court erred in the reception and handling of evidence and in ruling on objections thereto: in failing to exclude the People's psychiatrist from the courtroom and thereafter permitting him to testify partially on evidence he heard in the courtroom; in the giving and refusal of instructions; and in making rulings with reference to

the final argument of the State's Attorney in the cause. Defendant also prays in the alternative that the sentence imposed by the Trial Court be reduced.

The facts in the case disclose that the defendant, Daniel Cunningham, during his lunch hour from his employment at the Rock Island Arsenal, had gone to downtown Moline on an errand to pick up a gasket for an outboard motor. He started to go back to the Arsenal but on the way stopped at a tavern in Moline. He then drank in that tavern for at least 30 minutes, drove back to the Arsenal, but was advised that he should go home and come back the next day. He then drove to East Moline and stopped at another tavern where he drank more intoxicants. He then left this second tavern and went to his home for a short period around 6:30 p. m. but left to go back to the second tavern which also served food. Defendant ate at this tavern. He is not positive where he went next but he did arrive at a tavern called the 2 x 4 Tavern. Defendant had never been in the tavern before and did not know any of the people there. After he continued drinking in the latter tavern, defendant became engaged in conversation with another customer whose name was Max Sharp. The conversation became hostile and a scuffle ensued, as a result of which defendant was thrown to the floor and was later helped up by the bartender and asked to leave. He then left the tavern, drove to his home, took a shotgun, drove back to the tavern, opened the door, and made some insulting statements about and to the people who were customers in the tavern. He began firing seven shots from the shotgun at various individuals in the tavern and struck many persons including the bartender, James Officer.

The police, following a call from defendant's wife, who was not present in the tavern, found the defendant in the tavern and found it necessary to use gunfire to sub-

due defendant to prevent further violence on his part. Defendant was hospitalized and treated for his wounds.

Prior to the incident referred to, defendant had held a job at the Rock Island Arsenal as an inspector for a period of 11 years. He had an excellent reputation for being a peaceable and law-abiding citizen. Defendant had never committed any crime or been in any difficulty with the law. He had been married for 11 years and had two children. He was 34 years of age at the time of the shooting.

Defendant had a grammar school education. At the age of 17 he entered the Air Force where he remained for five years, and, after receiving his honorable discharge, he moved to the Rock Island-Moline area and took the job at the Rock Island Arsenal.

Prior to August 4, 1964, he had been a moderate social drinker and usually drank only beer. He never drank at home in deference to his wife's wishes. Some of the witnesses at the time of the incident testified that the defendant, when they observed him, did not appear in a drunken state. Others, including the bartender, said defendant was high or feeling his liquor. Defendant stated that he had memory gaps as to various things that took place on the night in question and didn't know exactly how much he had to drink.

At the hospital where he was taken following his injuries received from gunfire by the police, defendant was found in a highly disturbed condition by the treating doctor, was acting wild, and had a strong odor of alcohol about him. Defendant's conduct on the night of the shooting was completely different than at later times in the hospital, when he was subdued and polite.

A psychiatrist called on behalf of defendant, testified that he had examined defendant at the request of defense counsel, in the month of October, 1964. The psychiatrist concluded that defendant being examined was a different man than the one described in the shooting

incident on August 4, 1964. This psychiatrist also stated that he could determine with reasonable degree of medical certainty that on August 4, 1964, defendant, particularly during the shooting, suffered from a mental disease or a mental defect which rendered him lacking in substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. He stated that this mental disease or mental defect was produced and precipitated by an unusually large amount of alcohol which defendant had consumed from noon of that day until about midnight. The psychiatrist concluded that in a sober condition defendant could not have conducted himself in the manner in which he did.

Another psychiatrist was called on behalf of the People and testified that he had listened to various witnesses at the trial, including Daniel Cunningham, and, based on the testimony heard and other hypothetical facts propounded, in his opinion, at the time of the occurrence in question, defendant was not suffering from a mental defect or disease. He stated that defendant was able to form an intent to commit the crime he was charged with and was not sufficiently intoxicated so that the intent was negatived. He gave as one of the reasons for this conclusion, that of the witnesses who testified whom he had heard, only one stated that defendant staggered and the others did not. This psychiatrist for the State also concluded that defendant had substantial capacity to appreciate the criminality of his conduct and to conform his conduct within the requirements of law. He conceded that it is possible for a person to be in an insane condition for a period as short as half an hour or several hours or for longer periods and also stated that alcohol could produce temporary insanity and that persons in such condition could commit grave outrages of which they afterwards might remember nothing and which might appear incomprehensible to themselves.

One of the principal defense contentions is that the court erred in allowing the People to elicit answers to questions concerning the physical condition of individuals shot by the defendant. An inquiry was made by the State in the course of the trial as to the nature and effect of the injuries of various individuals who had been shot in the 2 x 4 Tavern on the night in question. When William Officer testified, he was asked by the State's Attorney to describe the extent of his injuries briefly. When the objection to this inquiry was over-ruled by the court, the witness was allowed to explain that three inches of the upper muscle of his right arm was struck and that the "bone was completely out." Upon defense objection requesting that this comment be stricken as prejudicial, the court responded that the answer could stand. The State's Attorney also asked whether Mr. Officer had been able to use his arm since that time and again, over objection, the witness was allowed to answer that he had "no use of the arm" because he couldn't lift his hand. The William Officer who so testified was not the same person as the James Officer who was the only victim named in the indictment which was tried. James Officer, who was the victim named in the indictment, was permitted to testify over defense objection whether or not he was still under a doctor's care and whether or not he had been able to return to work. The same line of questioning was asked as to other persons who were shot, including one who was interrogated as to whether he was able to use his right eye for vision; and another as to injuries to the right knee and loss of work as a result. Although objections were sustained to these questions, the results of the injuries were in fact communicated to the jury by the questioning (People v. Nickolopoulos, 25 Ill2d 451, 185 NE2d 209).

Defendant cites People v. Nickolopoulos, supra, where a shooting had occurred in a restaurant. The defendant

in that case had been drinking and the evidence was undisputed that defendant had shot the victim with a gun. In that case (where the charge was Assault with Intent to Commit a Murder) the issue was whether or not defendant had the intent to kill or whether intoxication negatived that intent. An officer in that case testified that when he looked at the victim he observed blood on the floor and when he removed him from the stretcher at the hospital he observed blood on the stretcher. Such testimony was objected to and over further objections the victim was permitted to testify that as a result of the shooting he was paralyzed in his left leg and had a number of holes in his intestine. The Supreme Court found prejudicial error in the questions and answers and reversed on that ground alone. In that opinion the court stated (at Page 454):

> "The evidence of blood on the victim's clothing, the floor and the stretcher and the evidence of the extent of the victim's injuries was irrelevant and improper. The question concerning the victim's condition in the hospital was likewise improper and even though an objection to this question was sustained, the jury was informed as to the victim's condition. The erroneous evidence was of such a nature as to be highly prejudicial to the defendant."

In People v. Carpenter, 49 Ill App2d 101, 199 NE2d 457, the Illinois Appellate Court held that even though evidence was admitted without objection the testimony as to the extent of wounds and bleeding suffered by a victim and a demonstration by the victim as to where the bullets had entered the body were irrelevant and improper in a prosecution for attempt to commit the offense of murder by shooting with a gun. The court there found the admission of such evidence constituted reversible error.

■■ The State contends that the present case differs from the Nickolopoulos case in that in such case the State belabored the gruesome aspects of the crime and defendant did not introduce evidence similar in nature to that elicited by the State. It is contended that the People certainly did not belabor the testimony in question and that there was a waiver by defendant of any such error since defendant brought out the gruesome and unpleasant aspects of the case. The People contend that the present case differs from the Nickolopoulos case fundamentally since the Nickolopoulos prosecution was one for assault with intent to commit murder whereas this defendant was tried for attempt to commit murder under the present statute. The elements of the offense under the present Act (1963 Illinois Revised Statutes, chapter 38, § 8–4(a)) are specified to be that "a person commits an Attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense." The indictment in this case stated that defendant took a substantial step toward commission of the offense of murder by shooting and wounding James Officer. The extent of wounds of James Officer were, therefore, clearly relevant in the case since the nature of the wounds and their location might be significant in determining whether or not the shooting and wounding was an attempt to kill. It is further contended that the injuries to the other victims were relevant because they were all part of the res gestae (People v. Weger, 25 Ill2d 370, 185 NE2d 183). In the Weger case, the evidence relating to the murders of two women (other than the victim named in the indictment) was so inseparable from evidence relating to the killing of the victim referred to in the indictment that such evidence was admissible as part of the res gestae. It is contended by the People that the nature and extent of the wounds to other per-

364

sons tended to show the intent of defendant to commit murder, which was the controverted point in the case. We cannot justify on the basis of the record before us, however, the evidence which consistently went into the resulting disability of persons other than James Officer.

It is also vigorously contended that the Trial Court erred in refusing to exclude the People's psychiatrist from the courtroom in advance of his testimony, or in the alternative, erred in permitting him to testify after he had listened to the testimony of various witnesses and in permitting him to answer questions, based on his observations in the courtroom, and, likewise, to indulge in characterizing the evidence, in a manner which should be reserved to argument, wherein he weighed and passed on the credibility of testimony.

■ At the outset of the trial, the court ordered the exclusion of witnesses from the courtroom. Early in the trial, the psychiatrist who testified for the State appeared. The State's Attorney requested that he be allowed to hear the proceedings so that he could obtain "background information." His appearance was objected to on the ground that the expert's answer to a hypothetical question should not be based in part upon a prior observation of defendant during the course of the trial. The State's Attorney conceded that he only intended to have the psychiatrist observe the defendant while testifying but also wanted him to watch the other witnesses in order to get his "background information." Objection was made to this procedure on the ground that the psychiatrist would necessarily base his conclusions on the testimony of the other witnesses and could not separate his observations of defendant from testimony of others with reference to activities of the defendant on the day in question. The court overruled the objections and the psychiatrist was allowed to sit in the courtroom from that time until he testified. The court

properly acted within its discretion in permitting the psychiatrist to observe the defendant while the defendant testified.

■ The psychiatrist at the time of testifying indicated that he had been a spectator in the courtroom since the second day of the trial and had stayed in the courtroom continuously during the trial until he took the stand. He was the last witness to testify. He stated that he had listened to every witness who testified since he first appeared in the courtroom, and that he had made notes of the testimony of various witnesses. He also stated that he had conferred from time to time with the State's Attorney and gave him the benefit of his observations as to particular witnesses when asked. He stated his testimony would be based on and include matters that he observed including hearing the various witnesses in the case. Objection was made to the testimony of the psychiatrist in form of a motion that he be denied the privilege of appearing as a witness for the reason that in formulating an opinion as to the competency of the defendant, the psychiatrist would be basing it upon matters heard from witnesses who were testifying to the events of the evening in question. The motion was denied. In his testimony before the jury, the psychiatrist was asked a hypothetical question by the State which by its terms asked him to base his opinion, in part, on what he heard in the courtroom. Objection to this line of questioning was overruled. In another hypothetical question, over objection, the psychiatrist was again asked to base his opinion on the testimony he heard in the courtroom and he was allowed to answer. The courts of this State have frequently asserted that a medical witness or expert should not base his opinion on evidence heard from the witness stand which is conflicting (Maton Bros., Inc. v. Central Illinois Public Service Co., 356 Ill 584, 596, 191 NE 321; Illinois Cent. R. Co. v. McCollum, 130 Ill App 267, 276).

In the course of the trial, the psychiatrist in the case before us was specifically asked to base his opinion on what he heard in the courtroom. In one instance he was asked to state the reasons why he believed defendant was able to form the requisite intent to commit the crime charged. His answer was: "I have seen the witnesses here. Only one witness do I recall mentioning that this man's walk was not normal. All the others made no mention of the fact that he staggered." When this answer was developed, a motion was made for mistrial on part of the defendant, which was denied by the court. The motion was predicated on the grounds that the psychiatrist was basing his opinion on what the witnesses had said, was weighing their testimony, passing on their credibility, and arguing his observations to the jury. In other instances the witness made similar observations. On one occasion he stated: "I think the so-called memory gaps are most unique. Here is a man who went to the 2 x 4 Tavern . . . ." Objection was made to this commentary on the ground that it was in the form of an argument or comment to the jury.

■ The People correctly contend there is no error in having the psychiatrist present in the courtroom in advance of testifying inasmuch as exclusion of witnesses is discretionary with the Trial Judge. It is also contended that since the State was not permitted to examine the defendant (the defendant did not consent to such examination) the State could only rebut the defense testimony by producing a psychiatrist to observe the defendant on the stand. It is contended that a proper hypothetical question was put to the psychiatrist and that he answered on the basis of a competent understanding and that the defense attorney through his objections filled in the hypothetical question by reiterating all of the evidence presented by the defense.

■ As we have indicated, it was proper for the court to permit the psychiatrist to be present to observe

the defendant while he testified. We can find no justification, however, for permitting the psychiatrist to observe and hear the other winesses and thereafter in his testimony to refer and characterize the testimony of such witnesses on the basis of the conclusions of the psychiatrist. In so doing, he was erroneously permitted to invade the province of the jury in some limited areas and this was accentuated by the fact that he was the final witness to testify.

Other alleged errors were raised by defendant relating to the argument by the State's Attorney: to the questioning of defendant's psychiatrist with reference to testimony in unrelated criminal cases; to the injection of the issue of civil rights and riots in the trial; and in the giving and refusal of certain instructions. It is unnecessary to discuss these matters since it is unlikely that there would be a repetition of the major alleged errors asserted by defendant on a trial of this cause.

■ ■ It is essential that each defendant receive a fair and impartial trial regardless of the reprehensible nature of the crime which is charged. It is basic that the jury should properly determine whether defendant committed the offense charged and whether at the time he had the capacity to appreciate the criminality of his conduct. This cause will, therefore, be reversed and remanded to the Circuit Court of Rock Island County for a new trial.

Reversed and remanded.

CORYN, P. J. and STOUDER, J., concur.