THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MICHAEL CHATMAN, Defendant-Appellant.
First District (5th Division)   No. 80—294

Opinion filed October 29, 1982.

Steven Clark and Karen Michels, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Raymond Brogan, and Joseph L. Ponsetto, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Following a jury trial, defendant was convicted of one count each of attempted murder and armed violence.[1] On appeal, he contends (1) that the trial court erred in (a) refusing a defense instruction on justifiable use of force, (b) permitting complainant to display his wounds to the jury, (c) admitting certain hearsay testimony, and (d) considering improper evidence at the sentencing hearing; and (2) that he was prejudiced by comments made in the State's closing argument.

There is no contention that guilt was not established beyond a reasonable doubt and, accordingly, the facts presented will be those relevant to the issues raised.

Complainant, Shawn Marshall, testified that pursuant to a telephone call from defendant, he went with his four-year-old son, DeShawn Brown, to defendant's house in Chicago, where defendant pointed a gun at him and asked that he relate what happened to defendant's brother Warren; that although they had discussed what happened three years before, defendant said he wanted to hear it

---

[1]He was charged with two counts of attempted murder, three counts of aggravated battery, two counts of armed violence, and one count of aggravated kidnaping.

again; that later, at defendant's request, he also told defendant's brother Walter what happened to Warren, and after discussing the subject with them for about an hour his son said he wanted to leave; that while he was putting on his son's coat and hat, defendant shot him in the right side; that he then wrestled with defendant and Walter for defendant's gun, but he was thrown to the floor and his hands were tied behind his back; that he was able to work his hands loose and, when he grabbed his son and made a break for the door, defendant shot him again in the left arm; that defendant and Walter retied his hands behind his back and put him in the trunk of a car; that after about an hour, the car stopped and the trunk was opened; that he heard defendant say, "He should be dead by now," and they then threw him into a river; and that he was able to swim across the river to a house on the opposite bank, where he asked for help and was ultimately taken to a hospital. Over defense objection, he was permitted to open his shirt and lift up his undershirt to show his wounds to the jury.

Police Inspector Cornfield testified that after arresting Walter, he went to the Chatman residence where he observed a bullet hole in a door leading to the basement, a shell casing, and what appeared to be blood spatterings on a support beam; that Walter told him and other investigators where Marshall's son had been dropped off and directed them to some bushes in the vicinity of 47th and Lake Shore Drive, where he found the boy the next day lying in the weeds and leaves. Over objection, Cornfield testified that as he carried the boy out of the bushes, he started crying and told them that "his father had been killed by some man named Michael."

Dr. Peterson testified that the wound in Marshall's left arm was through and through, but involved only tissue; that in the right chest region there was an entrance wound from a penetrating missile but with no exit point; that he performed exploratory surgery which required a mid-line incision to the abdominal cavity and that 10 days later his associate made a small incision in Michael's back to remove a bullet from a muscle.

The defense called Officer Long of the Kankakee County sheriff's police, who stated that in response to a telephone call from a woman, he went to her home in St. Anne, Illinois, which was next to the Kankakee River, where he found Shawn Marshall wrapped in blankets and that Marshall told him that Michael Chatman had shot him.

Brenda Chatman testified that she was in her bedroom when she heard a loud crash and went down to the basement where she saw Shawn Marshall kneeling underneath the table; that defendant told

her to go back to her room, and that on her way back upstairs she heard someone say that all he wanted to do was to leave with his little boy.

Walter Chatman testified that when he went downstairs to the basement of their home, defendant, Marshall, and DeShawn Brown were there; that the two men were discussing what happened to his brother Warren; that they started to argue and wrestle, and he then heard a gunshot and saw Marshall and a gun fall to the floor but he did not see who had the gun; that he went upstairs to answer the door for a friend of defendant's who went downstairs while he remained upstairs; that later he gave defendant the keys to his car, following which he went to the basement and found DeShawn; that defendant and his friend returned about two hours later, and he drove them and the boy to the vicinity of 47th and Lake Shore Drive, where defendant and the boy got out of the car and defendant returned about five minutes later without the boy; and that, after his arrest the next day, he directed the police to where DeShawn had been left by defendant the evening before.

OPINION

We turn first to defendant's contention that the trial court erred in refusing his tendered instruction on justifiable use of force. While it is recognized that "slight evidence" will justify an instruction on a given defense (*People v. Lockett* (1980), 82 Ill. 2d 546, 413 N.E.2d 378), it is not error for the court to refuse an instruction where there is no evidence to support a particular defense (*People v. Miller* (1974), 21 Ill. App. 3d 762, 316 N.E.2d 269). Self-defense concerns the use of force which a person reasonably believes is necessary to protect himself, and the instruction is appropriate where there is evidence that a defendant knowingly and intentionally used force against another but not where a shooting was accidental. *People v. Joyner* (1972), 50 Ill. 2d 302, 278 N.E.2d 756; *People v. Purrazzo* (1981), 95 Ill. App. 3d 886, 420 N.E.2d 461, *cert. denied* (1982), 455 U.S. 948, 71 L. Ed. 2d 661, 102 S. Ct. 1448; *People v. Dzambazovic* (1978), 61 Ill. App. 3d 703, 377 N.E.2d 1077.

In the instant case, only complainant, defendant's brother, and his sister gave testimony concerning the shooting. Complainant testified that when he arrived at defendant's home with his son, defendant pointed a gun at him on his way to the basement; that he discussed with defendant and Walter what had happened to their brother for about an hour; that while he was putting on his son's coat and hat, defendant shot him; that when he wrestled with defendant and Walter

for defendant's gun, they threw him to the floor and tied his hands behind his back; that he worked loose and, when he tried to leave with his son, he was again shot by defendant. On cross-examination, defense counsel brought out that at the preliminary hearing complainant testified that he was struggling with defendant, who had the gun in his hand, when he (complainant) was shot in the arm and side.

Brenda Chatman testified that she went to the basement after hearing a loud noise and, as she was going back upstairs at the request of defendant, she heard someone say that all he wanted to do was to leave with his little boy. Walter testified that defendant and complainant were discussing what had happened to Warren, and after they started arguing and wrestling, he heard a gunshot and saw complainant and a gun fall to the floor, but he had not seen who had the gun.

■ In effect, it was complainant's testimony that defendant shot him twice while he was attempting to leave and defendant presented no evidence to the contrary or of any actions of aggression on complainant's part. While Walter stated that complainant was shot during a quarrel and complainant, at the preliminary hearing testified that he was shot during a struggle for defendant's gun, there is nothing in the record to indicate that defendant could reasonably have believed that the use of deadly force was necessary to prevent great bodily harm to himself. Further, if any inference can be made from the testimony concerning the discharge of the gun during the struggle, it is that the shooting was accidental, and an instruction on self-defense is not justified under such circumstance. (*People v. Joyner* (1972), 50 Ill. 2d 302, 278 N.E.2d 756.) We conclude that an instruction on the justifiable use of force was properly refused.

We note at this point that defendant has failed to include in his post-trial motion any of his other contentions of trial court error and that this constitutes a waiver of those issues on appeal. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) However, even assuming that they were properly before this court, we conclude that they did not amount to prejudicial error.

The first such allegation of error is that complainant was improperly allowed to display his wounds to the jury. Following complainant's testimony that he had been shot in the right side and the left arm, the prosecutor asked that he remove his shirt to show the jury his wounds. Over defense objection, the court permitted the display, stating: "I would ask that he open his clothing to a minimal amount so that they can see. He can open his shirt and lift up his underclothing [but] doesn't have to disrobe completely; in this context, we will

try to keep it down to a minimum." Defendant argues the display had no relevancy and that it prejudiced defendant in that, after viewing the wounds, the jury was more likely to find him guilty.

In support of his position, defendant relies principally on *People v. Nickolopoulos* (1962), 25 Ill. 2d 451, 185 N.E.2d 209, and *People v. Carter* (1951), 410 Ill. 462, 102 N.E.2d 312, both of which involved a charge of assault with intent to commit murder. In those cases, the courts held that the extent of the wounds or injuries inflicted were irrelevant, with the *Nickolopolous* court quoting from *Carter*, as follows:

> " 'The specific intent required by the charge is found, not from the nature or seriousness of the injury inflicted, but from the proof of the reckless character and manner of the assault, the instrument made use of by the assailant, and the other facts and circumstances shown by the evidence as indicating a malicious heart and mind.' " 25 Ill. 2d 451, 454, 185 N.E.2d 209, 210, quoting *People v. Carter* (1951), 410 Ill. 462, 467, 102 N.E.2d 312, 314-15.

Here, however, defendant was charged and convicted of attempted murder concerning which it has repeatedly been held that the nature and seriousness of the injury are considered essential elements of the charge. (See *People v. Rodgers* (1971), 3 Ill. App. 3d 85, 279 N.E.2d 72, *aff'd* (1972), 53 Ill. 2d 207, 290 N.E.2d 251; *People v. Cunningham* (1966), 73 Ill. App. 2d 357, 218 N.E.2d 827. See also *People v. Nard* (1975), 32 Ill. App. 3d 634, 335 N.E.2d 790; *People v. Pearson* (1972), 4 Ill. App. 3d 462, 281 N.E.2d 422, distinguishing *People v. Nickolopolous* on those grounds.) As was stated by the court in *People v. Cunningham*:

> "The elements of the offense * * * are specified to be that 'a person commits an Attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense.' The indictment in this case stated that defendant took a substantial step toward commission of the offense of murder by shooting and wounding James Officer. The extent of wounds of James Officer were, therefore, clearly relevant in the case since the nature of the wounds and their location might be significant in determining whether or not the shooting and wounding was an attempt to kill." 73 Ill. App. 2d 357, 364, 218 N.E.2d 827, 831.

Furthermore, we find *People v. Nickolopoulos* and *People v. Carpenter* (1964), 49 Ill. App. 2d 101, 199 N.E.2d 457, also cited by defendant, distinguishable for the added reason that there is nothing

in the record here indicating that the display of complainant's wounds was prejudicial.

In *People v. Nickolopoulos*, the victim was shot in a restaurant and the court allowed testimony that he was bleeding while on the floor and on a stretcher; that at the hospital, he was fed intravenously and had tubes in his nose; and that, as a result of the shooting, he had seven holes in his intestines and had been paralyzed in his left leg. The court found prejudicial error in the admission of this evidence and reversed the conviction. Similarly, in *People v. Carpenter*, where defendant was charged with attempted murder, the court found that permitting the victim to disrobe to show the jury bullet scars on his chest and neck and testimony of other witnesses to seeing blood and the victim bleeding was irrelevant and improper and highly prejudicial.

Unlike those two cases, complainant here simply opened his shirt and lifted his undershirt to show the jury the location of his wounds, and there was no inflammatory testimony either as to the details of the shooting or as to complainant's appearance at the scene of the shooting or in the hospital.

Defendant further maintains that the evidence should not have been admitted because he had offered to stipulate that complainant was shot in the right side and in the left arm. The State, however, is not required to accept such a stipulation and has the right to prove every element of the crime. (*People v. Speck* (1968), 41 Ill. 2d 177, 242 N.E.2d 208, *rev'd on other grounds* (1971), 403 U.S. 946, 29 L. Ed. 2d 855, 91 S. Ct. 2279.) Defendant alternatively argues that the display was prejudicial because two of the scars were the result of surgical procedures rather than acts of defendant. We find this argument also without merit, in view of the fact that defendant had the opportunity to cross-examine complainant on the nature of the scars and that the doctor fully explained the reason for the incision as well as the circumstances surrounding the removal of the bullet from complainant's back.

Accordingly, since we believe that the display of complainant's wounds was relevant and not prejudicial, we conclude that there was no error in allowing complainant to show the jury the location of the wounds.

Defendant also posits that a police officer's testimony as to the statement made by complainant's four-year-old son, that "Michael killed my daddy," was erroneously admitted under the spontaneous declaration exception to the hearsay rule. The record reflects that the officer found complainant's son lying among weeds and leaves in a

group of bushes in an uninhabited area many hours after he was left there and, as he was carrying the boy from the bushes, the boy was crying and said that his father had been killed by a man named Michael.

For a statement to come within the spontaneous declaration exception, three factors must be present: "(1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence." (*People v. Poland* (1961), 22 Ill. 2d 175, 181, 174 N.E.2d 804, 807.) Here, defendant argues only that the second condition, the requirement of spontaneity, was not met because at least 18 hours had transpired between the occurrence and the statement. While the time which elapsed is material in determining spontaneity, it is not controlling, as the court must determine from the entirety of the surrounding circumstances whether there was an opportunity for reflecting and invention. (*People v. Poland; People v. Cherry* (1980), 88 Ill. App. 3d 1048, 411 N.E.2d 61.) Further, as this court stated in *In re Hatfield* (1979), 72 Ill. App. 3d 249, 257, 390 N.E.2d 453, 459:

"We are aware that the time factor of the spontaneous declaration exception is an elusive element that will vary with the particular facts of each case.

'Perhaps an accurate rule of thumb might be that where the time interval between the event and the statement is long enough to permit reflective thought, the statement will be excluded in the absence of some proof that the declarant did not in fact engage in a reflective thought process. Testimony that the declarant still appeared "nervous" or "distraught" and that there was a reasonable basis for continuing emotional upset will often suffice.' (McCormick on Evidence §297, at 706 (Cleary 2d ed. 1972).)"

In the present case, it appears that the statement in question was made to the first person encountered by the boy after he had been abandoned in the bushes for approximately 18 hours after seeing his father shot twice. Further, it appears that the statement was not made in response to any question by the officer and was made while he was emotionally distraught, immediately after having been found by the officer. Under these circumstances, we believe that the spontaneity requirement was met and that the evidence was properly admitted. (See *People v. Robinson* (1981), 94 Ill. App. 3d 304, 418 N.E.2d 899, where due to surrounding circumstances this court found a statement by a child, 16 hours after an occurrence, to come within the

spontaneous declaration exception.) Moreover, in view of the nature of the occurrence and the fact that the boy was only four years old, we believe it highly unlikely that he would have fabricated the statement during the hours he was abandoned. As the court stated in *People v. Cherry*, in which the admission of a statement of a five-year-old girl was reviewed, "because of her age, she had no reason to lie. Her tender years militate strongly against any such claim." *People v. Cherry* (1980), 88 Ill. App. 3d 1048, 1055, 411 N.E.2d 61, 67; see also *People v. Miller* (1978), 58 Ill. App. 3d 156, 373 N.E.2d 1077.

Defendant next suggests that in determining his sentence, the court improperly considered his acquittal of a second count of attempted murder which charged attempt to kill by throwing complainant into the river while he was physically incapacitated. We disagree.

Following arguments in aggravation and mitigation, the trial court commented, in part, as follows:

> "The fact that at the time without fully knowing whether he was alive or dead the defendant took the victim, threw him in the back of a trunk of a car, drove him a number of miles and threw him in a river where, if he wasn't dead he would drown indicated, again, a very callous, very heinous type of occurrence."

In determining the extent and character of punishment, the trial court may look to the nature of the crime as well as to other circumstances tending to aggravate or mitigate the offense (*People v. Adkins* (1968), 41 Ill. 2d 297, 242 N.E.2d 258; Ill. Rev. Stat. 1979, ch. 38, par. 1005—4—1), and the imposition of a sentence will not be altered on review absent an abuse of discretion (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882). As stated in *People v. Crews* (1967), 38 Ill. 2d 331, 337, 231 N.E.2d 451, 454, "Plainly, a judge with the solemn responsibility of determining the punishment of the convicted is to be encouraged to hear and consider all available and pertinent information concerning the person and the crime, so as to enable him to impose a punishment which is appropriate."

■ Although the court referred to the river incident in the sentencing hearing, we note that the testimony concerning it was uncontested and had been presented at trial in relation to the shooting for which defendant was convicted of attempted murder. It was thus not improper for the court to consider in aggravation the fact that after the shootings, defendant threw complainant into the river. (See *People v. Jackson* (1979), 79 Ill. App. 3d 698, 398 N.E.2d 959.) Moreover, it appears that there was no mention at the sentencing hearing of the attempted murder charge on which he was acquitted, and we find no

indication in the record that the trial court considered that charge in sentencing.

■■ Finally, defendant challenges three remarks in the prosecution's rebuttal closing argument which he contends deprived him of a fair trial. He first refers to the prosecutor's statement that "a four-year-old boy can't testify," to which his objection was overruled. In Illinois, it is the degree of intelligence and understanding of a child, rather than his age, which are the relevant factors in determining whether a child under the age of 14 is competent to testify. (*People v. Ballinger* (1967), 36 Ill. 2d 620, 225 N.E.2d 10, *cert. denied* (1967), 388 U.S. 920, 18 L. Ed. 2d 1366, 87 S. Ct. 2141.) Thus, the prosecutor's statement here, that a four-year-old cannot testify, is incorrect—not only because no determination was made as to competency, but also because he was six years old at the time of trial. However, in view of the overwhelming evidence of guilt, we find that the remark could not have had any effect on the jury's verdict.

■■ The second instance of improper argument concerns a reference to fingerprints on a shell casing. The prosecutor argued, "As far as fingerprints on the shell, they know there are no fingerprints on the shell. They could have brought in the same evidence technicians we have to say there are no prints on them." It appears, however, we view this statement to have been made in rebuttal to the following remarks by defense counsel in his closing argument, "Why didn't they bring the cartridge case to tell you whether or not there were fingerprints on it? Why didn't they do that? Because these fingerprints, if any had been on it, may have been Shawn's." It is clear that where defense counsel has invited or provoked remarks, an accused cannot complain that he was prejudiced by statements made in rebuttal. (*People v. Vriner* (1978), 74 Ill. 2d 329, 385 N.E.2d 671, *cert. denied* (1979), 442 U.S. 929, 61 L. Ed. 2d 296, 99 S. Ct. 2858.) We therefore find no error in this statement.

■■ Third, defendant complains of a comment by the prosecutor that "if Shawn Marshall had died so would little Shawn Brown. That lad would have stayed in those woods for 20 hours. He would have stayed there until he died." Defendant argues this was improper because it was a statement of what counsel thought could have happened and that it was "designed to illustrate that defendant had little regard for life." However, a prosecutor has great latitude in closing argument (*People v. Reyes* (1981), 102 Ill. App. 3d 820, 429 N.E.2d 1277), and arguments and statements based upon legitimate inferences drawn from the facts in evidence are generally not outside the bounds of proper argument (*People v. Hairston* (1970), 46 Ill. 2d 348,

263 N.E.2d 840, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658). Here, it is uncontested that DeShawn Brown was abandoned by defendant for 18 hours in an isolated area and found by the police only after defendant's brother brought them to the location after he had been arrested. Under the circumstances, we believe that the comment was an inference reasonably drawn from the evidence.

For the reasons stated, the conviction and sentence are affirmed.

Affirmed.

LORENZ and MEJDA, JJ., concur.