THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOE DAVIS et al., Defendant-Appellants.

First District (4th Division) Nos. 82—2781, 82—2873 cons.

Opinion filed December 20, 1984.

44

James J. Doherty, Public Defender, of Chicago (Alison Edwards, Assistant Public Defender, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Jeanette Sublett, and David Kluever, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE LINN delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendants, Joe Davis and Dwayne Reid, were convicted of armed robbery. (Ill. Rev. Stat. 1981, ch. 38, par. 18—2.) Both defendants were sentenced to 18 years in the Illinois Department of Corrections. This consolidated appeal followed.

Defendants raise eight issues for consideration on review. Both defendants contend (1) that they were not proved guilty beyond a reasonable doubt of armed robbery. Defendant Davis individually contends that (2) he was denied a fair trial by the State's failure to disclose his statement, elicited from the victim at trial, concerning the commission of another crime; and (3) that improper evidence of flight in the course of his arrest was put before the jury. Defendant Reid individually contends that he was denied a fair trial by (4) the admission of the testimony of his mother; and (5) the ineffective assistance of counsel. Finally both defendants contend that (6) the trial court erred in admitting prior consistent statements of the victim; (7) that the prosecutor's remarks in opening statement and closing arguments

denied them a fair trial; and (8) that the 18-year sentences imposed by the trial court are excessive.

We reverse the convictions for armed robbery and remand for a new trial.

FACTS

On November 12, 1981, at approximately 4:45 to 5:30 in the afternoon, the victim was accosted and robbed by two men as she walked home from work. According to the victim's testimony, she had just gotten off the CTA train at the Cicero Avenue stop and was walking westbound on Lexington Avenue toward her home when defendant Davis, whom the victim knew from school and the neighborhood, grabbed her from behind. The victim testified that Davis held her by the neck with his left arm while at the same time cutting her gold neck chains off with a five- to seven-inch knife. At the same time, defendant Reid, also known to the victim from the neighborhood, attempted to grab her purse and asked her if she had any money. At this point in time, the victim's friend Cassandra Davis walked by the victim and defendants on the sidewalk. The victim testified that Cassandra stopped and asked her, "What's happening, Pumpkin." Defendant Reid then approached Cassandra and spoke with her while defendant Davis stood directly in front of the victim holding the knife in his pocket pointed at her side and telling her not to say anything. On cross-examination, the victim stated that Davis did not hold onto her while Reid and Cassandra spoke. After speaking with defendant Reid, Cassandra walked on toward her home.

After defendant Reid returned to where the victim and defendant Davis were standing, four men passed them on the street. The victim asserted that defendant Reid once again ran up to one of the men and spoke with him while Davis held the knife in his pocket to her side. The four men then moved on.

Cassandra Davis' testimony essentially corroborates that of the victim. According to Cassandra, she first saw the victim when she was at the corner of Lexington and Cicero and the victim was "about six houses" down the street with the defendants. Cassandra was not aware at that time that it was the victim or the defendants and recognized them only when she had caught up to them. Like the victim, Cassandra knew the defendants from school and the neighborhood. According to Cassandra, the victim was between the defendants on the sidewalk. Cassandra testified that at the time she caught up to the victim and defendants she stopped, looked at the victim, and noticed that she "looked scared." She inquired of the victim if anything

was the matter, and Reid came up to her and told her that Davis was trying to make a date. Cassandra then walked toward home looking back several times and passing four men walking toward the victim and defendants. On cross-examination, Cassandra testified that at no time had she seen any knives in Reid's or Davis' hands. The above events took place in the space of about 10 minutes.

The victim and defendants then moved to a gangway between two houses facing the street and into the backyard of one of the houses. The victim alleged that while in the gangway, Davis removed her leather coat. The defendants then pulled the victim into the backyard.

Once in the backyard, Davis pushed the victim up against the house. According to the victim's testimony, Reid then emptied her purse on the patio, taking $20, CTA tokens, and a leather compact. The victim asked Davis why they were doing this, and Davis responded that they needed "to get their ladies out of jail" and that "he [Davis] had just robbed another man."

The victim further testified that Reid then forced her by the chimney part of the wall on the back of the house. Reid then searched her for more money, forcing her to take off her shoes. Reid also untucked the victim's shirt and felt for money under her shirt and bra.

Reid then told the victim that he believed she had more money and hit her with a closed fist three times on her face, splitting her lip. Reid again asked her if she had any more money. When she told Reid that she had no more money, Davis took out his knife, held it to her throat, and again asked for money. Her testimony continued that when she repeated that she had no more money, Davis lowered his knife and Reid also took out a knife. The victim stated that Reid said that they would have to hit her "where it hurts" and that Davis stated that they would have to leave her there because she could identify them.

The victim testified that the robbery ended when a Mrs. Jones, who lived in the next house, came out to empty her garbage, frightening away Davis and Reid. At that point, she jumped the fence into Mrs. Jones' yard and asked to use the telephone. Once in Mrs. Jones' house, the victim told her that she had been robbed and beaten and that she knew her attackers. Mrs. Jones' testimony essentially corroborated this portion of the victim's testimony, except that there was no testimony that Mrs. Jones saw any knives or that the victim told her about the knives.

The victim testified further that she called home from the Jones' house and talked with her mother. A short time later, her father came and took her home. In the meantime, someone at the victim's home

called the police. Prior to their arrival, the victim received a phone call from Cassandra Davis. She testified that she told Cassandra that she had been robbed and beaten by defendants. She also learned the full names of both defendants from Cassandra. Cassandra testified that the victim had told her that the defendants had "hit her in the jaw and they had cut her chains and took her jacket."

The victim claimed that about 6 p.m. police officers arrived at her home and spoke with her, her mother, and her father. One of the officers, Officer Nelson, testified that he and his partner received a radio call to investigate an "attempt rape" and proceeded to the victim's home where they were met by the victim and her mother and father. According to the officer, the victim was upset and the right side of her face was swollen and red. She told the officer that she was robbed at knifepoint by the defendants and that they had taken her coat, purse, $20, a small leather purse, and some tokens. The officer also stated that the victim told him that both defendants had knives. On cross-examination, however, the officer acknowledged that the police report prepared by him and his partner mentioned only one knife and omitted several of the items claimed by the victim to have been taken.

Defendant Davis was arrested at his home on November 17, 1981. Defendant Reid voluntarily surrendered two days later. Following a jury trial, both defendants were convicted of armed robbery and sentenced to 18 years in the Illinois Department of Corrections. This appeal followed.

OPINION

I

The defendants' first argument on appeal is that they were not proved guilty of armed robbery beyond a reasonable doubt. The victim's testimony was the only direct evidence that the defendants had committed armed robbery. Defendants contend that the victim's testimony, taken as a whole, is so unbelievable as to preclude a finding of guilt beyond a reasonable doubt.

The State contends that the question of reasonable doubt turns upon the issue of the credibility of the victim, and that because the jury found the victim to be credible, defendants were proved guilty of armed robbery beyond a reasonable doubt. We agree with the State's contention.

It is the function of the trier of fact to determine the credibility of witnesses, the weight to be given their testimony, and the in-

ferences to be drawn from the evidence; and a court of review will not substitute its judgment for that of the trier of fact. (*People v. Akis* (1976), 63 Ill. 2d 296, 298-99, 347 N.E.2d 733.) Moreover, the testimony of one witness, if positive and credible, even if contradicted, is sufficient to convict. (*People v. Novotny* (1968), 41 Ill. 2d 401, 411, 244 N.E.2d 182.) A conviction will be reversed, however, where the State's evidence is so improbable, unconvincing, or contrary to human experience that a reasonable doubt as to guilt is raised. *People v. Yarbrough* (1977), 67 Ill. 2d 222, 367 N.E.2d 666.

■ Defendants' convictions for armed robbery rest solely on the testimony of the victim. The jury found her testimony to be credible, and we cannot conclude that her testimony was so improbable or unconvincing to compel a reversal of the defendants' conviction on this ground alone. The victim's testimony was positive and consistent in all respects material to establishing the offense of armed robbery. Moreover, the victim's credibility was enhanced by the corroborating testimony of Cassandra Davis and Mrs. Jones concerning the time, place, the identification of the defendants, and the mental state of the victim during and immediately after the robbery.

No evidence at trial directly impeached or contradicted the victim's testimony. While it appears from the evidence that the first three times she recounted the facts of the robbery she omitted any mention of knives, this alone does not render her testimony so improbable as to raise a reasonable doubt of the guilt as the defendants contend. Every witness who saw the victim immediately after the robbery testified that she was crying and upset. Under such circumstances, we cannot independently conclude that such omissions render the victim's testimony unbelievable.

Similarly, we cannot accept the defendants' contention that the fact that the police officers who initially investigated the victim's complaint were responding to an "attempt rape" call raises a reasonable doubt of defendants' guilt. We refuse to speculate as to the possible explanations for this inconsistency.

Finally, we reject defendants' contention that the victim's failure to cry out to the four men who passed her and the defendants on the sidewalk defies human experience and creates a reasonable doubt as to defendants' guilt. We agree with the State's contention that the presence of knives is a reasonable explanation for the victim's failure to cry out for help. Considering all of the above, we find that the victim's testimony was positive, credible and sufficient to support defendants' convictions for armed robbery.

## II

Our inquiry, however, does not end with our finding that the victim's testimony was sufficient to convict defendants of armed robbery. Defendants both individually and together set forth contentions to the effect that certain testimony adduced at trial was so prejudicial as to deny them a fair trial. We will therefore examine each of defendants' contentions in turn.

## A

The first of these contentions is asserted by defendant Davis. On direct examination, the State elicited from the victim that during the robbery Davis had told her that he had just robbed another man. Counsel for Davis was never informed of this statement during pretrial discovery and was unaware of the statement or that the State intended to use such testimony at trial. Counsel objected to the testimony and moved for a mistrial. This motion and a motion to strike were denied.

Illinois Supreme Court Rule 412, which governs the mechanics of criminal discovery, provides in pertinent part:

> "(a) *** [T]he State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control:
>
> * * *
>
> (ii) any written or recorded statements and the substance of any oral statements made by the accused or by a codefendant, and a list of witnesses to the making and acknowledgement of such statements ***." (73 Ill. 2d R. 412(a), (ii).)

The purpose of this rule is to allow defense counsel to investigate the circumstances surrounding the statement in order to protect the defendant from surprise and inadequate preparation. (*People v. Perez* (1981), 101 Ill. App. 3d 64, 427 N.E.2d 820.) Moreover, compliance is mandatory, and the State must disclose not only statements made to law enforcement personnel in the nature of an admission or confession, but all statements known to it. (*People v. Winfield* (1983), 113 Ill. App. 3d 818, 447 N.E.2d 1029.) This includes statements to witnesses unconnected with the State. (*People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203.) Furthermore, once the trial court determines that a discovery violation has occurred it may order compliance, grant a continuance, exclude the evidence in question, declare a mistrial or order any sanction it "deems just under the circumstances." (73 Ill. 2d R. 415(g); *People v. Watson* (1979), 76 Ill. App. 3d 931, 395 N.E.2d 682.) Reversal, however, is required only where the defendant is sur-

prised or prejudiced by the undisclosed statement. *People v. Greer* (1980), 79 Ill. 2d 103, 120.

Defendant Davis contends that he was prejudiced by the nondisclosure in that it prevented him from barring "other crimes" evidence by a motion *in limine*, and, alternatively, it prevented him from investigating the statement so as to impeach the victim's account. Underlying Davis' contentions is the prejudice he claims resulted from the jury's hearing this "other crimes" evidence.

The State claims that, although the discovery rules required that the prosecutor disclose Davis' statement, Davis has not demonstrated that he was prejudiced by the nondisclosure. According to the State, reversal is not required here since the victim was listed as a potential witness, defendant Davis had an opportunity to interview the victim and did so, and Davis' statement was not essential to support his conviction.

Under the concepts of a fair and impartial criminal trial, it is fundamental that a defendant, no matter how reprehensible or how great his history of past crimes, is entitled to have his guilt or innocence determined solely with reference to the crime with which he is charged. (*People v. Gregory* (1961), 22 Ill. 2d 601, 603, 177 N.E.2d 120, 122.) Thus, evidence of separate or unrelated crimes for which the defendant is not on trial is inadmissible if relevant merely to establish propensity to commit criminal acts. (*People v. Romero* (1977), 66 Ill. 2d 325, 362 N.E.2d 288.) Such evidence overpersuades the trier of fact, which is likely to convict defendant merely because of feelings he is a bad person deserving punishment rather than on the basis of facts related to the offense for which he is on trial. (*People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238.) Thus, such evidence carries a high risk of prejudice for the criminal defendant. 79 Ill. 2d 129, 140.

We can discern no reason, and the State has not supplied any, why Davis' statement was elicited at trial except to establish that Davis had a propensity to commit robbery. While we agree with the State's contention that nondisclosure of a defendant's statement is not ordinarily prejudicial unless essential to the conviction (*People v. Greer* (1980), 79 Ill. 2d 103, 120), we cannot agree that its admission into evidence was not prejudicial in this case. As the State concedes, defendant Davis was clearly entitled to the disclosure of the substance of this statement prior to trial from the State. We therefore find that it was error for the trial court to refuse to take some action to exclude this "other crimes" evidence, especially where Davis was completely surprised when the statement was elicited at trial. Compare

*People v. Weaver* (1982), 92 Ill. 2d 545, 561, 442 N.E.2d 255; *People v. Bailey* (1982), 103 Ill. App. 3d 503, 431 N.E.2d 723.

## B

The next contention, raised by defendant Reid, is that he was denied a fair trial by the admission of the statement by Reid's mother that she apologized to the victim and requested her to drop the charges. Reid claims that this was highly prejudicial and impermissible hearsay.

At trial, during the State's case in chief, the victim testified to a conversation she had with Reid's mother nine months after the robbery. The victim was on her way to work and coincidentally met with Mrs. Reid on the train. According to the victim, Mrs. Reid apologized for "what he did" and that "she was sorry, real sorry." The victim further testified that Mrs. Reid asked her if she would "drop the charges." Counsel for defendant Reid did not object to this portion of the victim's testimony.

Mrs. Reid was called as a defense witness to testify to certain facts not important to this appeal. However, in an apparent attempt to rebut the victim's claim that Mrs. Reid had asked the victim to drop the charges, defense counsel asked her if she had in fact made such a request, to which she responded that she had not. On cross-examination, the State was allowed, over Reid's objection, to again cover the entire conversation between the victim and Mrs. Reid.

We first face the State's claim that defendant Reid waived any objection to the complained-of testimony for purposes of appeal. The State first asserts that defendant Reid made no objection to the testimony, and it was not raised in his written motion for a new trial, thus waiving the objection. Second, the State urges that defendant Reid's exploration of the victim's testimony on cross-examination of the victim and in calling Mrs. Reid as a defense witness and questioning her concerning the conversation resulted in waiver of the objections. We treat the latter contention first.

Where a defendant objects to the admission of testimony on direct examination, but then pursues a similar line of questioning on cross-examination, any error is thereby waived for purposes of appeal. (*People v. Bost* (1980), 80 Ill. App. 3d 933, 400 N.E.2d 734.) Similarly, where a defendant fails to object to certain testimony, and elicits the same or similar testimony on cross-examination, any error in the testimony is deemed waived. (*People v. Darby* (1978), 58 Ill. App. 3d 294, 374 N.E.2d 229.) Thus, we conclude that defendant Reid has waived any error concerning the victim's testimony into which he inquired on

cross-examination or on direct examination of Mrs. Reid. Our review of the record, however, shows that Reid's inquiry into the conversation was limited to Mrs. Reid's request that the victim drop the charges against her son. Therefore, defendant Reid has not waived any error concerning his mother's apology to the victim based on his cross-examination of the victim or direct examination of Mrs. Reid.

The unfortunate circumstance of the victim's testimony concerning Mrs. Reid's apology is that severely prejudicial testimony was adduced at trial without objection and without mention in defendant Reid's post-trial motion. The law is well settled that a defendant's failure to object to hearsay testimony or to include such an objection in a post-trial motion as grounds for a new trial results in a waiver of the error. (*People v. Key* (1984), 122 Ill. App. 3d 491, 461 N.E.2d 517.) Accordingly, we may properly treat these omissions as waived on appeal. The defendant claims, however, that the testimony was so prejudicial that we should consider it as plain error. We find merit in this contention.

Under Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)), the court may elect to consider errors that have not been properly preserved for review where the complained-of error is so prejudicial that real justice has been denied or that the jury's verdict may have resulted from the error. (*People v. Yates* (1983), 98 Ill. 2d 502, 456 N.E.2d 1369, *cert. denied sub nom. Williams v. Illinois* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364.) As we find that the testimony of the victim concerning Mrs. Reid's apology, if improperly admitted, was so severely prejudicial to the defendant Reid, we elect to consider his contention under the plain-error doctrine.

The defendant argues that the apology testimony was impermissible hearsay, not within any exception, and offered to prove the truth of the matter asserted. The State insists that the hearsay was admissible because the declarant (Mrs. Reid) was available for cross-examination.

While it is true that hearsay testimony is admissible where the declarant is present at trial and available for cross-examination (*People v. Carpenter* (1963), 28 Ill. 2d 116, 190 N.E.2d 738), we cannot find this to be the case here. Here, the apology testimony was elicited by the State from the victim. The State, however, did not call Mrs. Reid as a witness to complete the foundation for the apology testimony. Thus, the mere fact that defendant Reid called Mrs. Reid as a witness did not make her subject to cross-examination by the defendant. Although defendant Reid called Mrs. Reid as a witness, it is a general rule that a party may not cross-examine his own witness (*Peo-

*ple v. Boyd* (1974), 22 Ill. App. 3d 1010, 1021, 318 N.E.2d 212; *People v. Kelly* (1976), 39 Ill. App. 3d 190, 350 N.E.2d 163) except under limited circumstances not applicable here. She was therefore not available to defendant Reid for cross-examination. We must therefore conclude that the victim's testimony was impermissible hearsay.

■■ ■ Out-of-court statements used for purposes other than establishing the truth of the matter asserted, however, may be admissible. Such statements may be used to show state of mind of the recipient after hearing the statement (*People v. Cooper* (1981), 97 Ill. App. 3d 222, 422 N.E.2d 885, *cert. denied* (1982), 455 U.S. 945, 71 L. Ed. 2d 657, 102 S. Ct. 1442), or notice or knowledge of a certain fact (*People v. Campbell* (1975), 28 Ill. App. 3d 480, 328 N.E.2d 608). Prior inconsistent out-of-court statements may also be admissible if used to impeach a witness. (*People v. Montgomery* (1972), 51 Ill. 2d 198, 282 N.E.2d 138.) Here, the defendant argues, and we agree, that the only conceivable purpose for eliciting the apology testimony from the victim and cross-examining Mrs. Reid concerning the alleged apology was to raise the highly prejudicial inference that the defendant's own mother believed him to be guilty of the crimes charged. Under these circumstances, we must find that the admission of this hearsay testimony was error. Compare *People v. Palmer* (1979), 76 Ill. App. 3d 1014, 395 N.E.2d 713.

C

■■ Next, defendants contend that they were denied a fair trial by the State's use of the victim's prior consistent statements. Defendants point to nine separate instances in the victim's testimony, that of other State's witnesses, and that elicited from Mrs. Reid on cross-examination, which allowed the State to bolster the victim's in-court account of the robbery.

The victim first testified that moments after the crime, she told Mrs. Jones that she had been robbed and beaten. The victim also testified that in her phone conversation with her mother from Mrs. Jones' house, she told her mother that she had been robbed and beaten. On defense counsel's objection, the substance of this conversation was stricken. Later in her testimony, she described how she told Cassandra Davis that "Butch and Joe robbed me and beat me up." She also testified that she told the investigating police officer that she was robbed at knifepoint by the defendants and recounted again how she was robbed. Finally, her conversation with defendant Reid's mother was recounted in which the defendant testified, over defense objection, that she told Mrs. Reid all the details of the crime including that defendant Reid had used a knife. While objections were raised

only to the victim's testimony with regard to what she told her mother and Mrs. Reid, the defendants raised all of the testimony in their written motion for a new trial.

In addition to the victim's testimony, Cassandra Davis, the victim's father and the police officer who responded to the victim's initial complaint all testified, without objection from the defendants, as to the substance of their conversations with the victim in detail. Furthermore, over a defense objection, the State cross-examined Mrs. Reid concerning the details of her conversation with the victim nine months after the robbery.

We again face the State's assertion that any error based on these prior consistent statements was waived by the defendant's failure to object at trial and the defendants' contention that we should consider this testimony as plain error. Because the sheer volume of prior consistent statements admitted at trial may have improperly influenced the jury's verdict of armed robbery, we elect to consider the defendant's contentions under the plain-error doctrine. (Compare *People v. Hudson* (1980), 86 Ill. App. 3d 335, 408 N.E.2d 325.) Moreover, we cannot decline to consider defendants' contention with respect to the victim's testimony concerning her conversation with Mrs. Reid, as the defendants properly preserved their objection for our review.

It is the general rule that a witness may not testify as to statements she made out of court for the purpose of corroborating her testimony given at trial. (*People v. Emerson* (1983), 97 Ill. 2d 487, 501, 455 N.E.2d 41.) Exceptions to this rule allow the admission of prior consistent statements to rebut a charge of recent fabrication (97 Ill. 2d 487, 501), or where the statements qualify as spontaneous declarations. (*People v. Robinson* (1978), 73 Ill. 2d 192, 199, 383 N.E.2d 164.) The State argues that the prior consistent statements admitted at trial in the instant case fit within these exceptions.

Before turning to the State's claims concerning the spontaneous declaration and recent fabrication exceptions, we must first dispose of the State's argument that a third exception to the prior consistent statement rule is applicable here. The State, relying on *People v. Rodriguez* (1978), 58 Ill. App. 3d 562, 374 N.E.2d 904, maintains that prior consistent statements may be admitted to assist the jury in determining whether a witness actually made an alleged prior inconsistent statement, and that this exception is available under the facts of the instant case. The State points to particular inconsistencies, raised by the defense, between the victim's testimony and the report she made to the police shortly after the robbery and the unexplained "attempt rape" call to which the police responded. The State argues that

it was for the jury to decide whether the victim made these allegedly impeaching statements, and that the prior consistent statements were admissible to aid the jury in their determination.

*Rodriguez*, however, does not support the State's argument. There, the defendant was found guilty of aggravated battery and attempted murder for shooting a patron in his tavern. A friend of the victim testified that he had observed the shooting from a table approximately eight feet from the victim. A police report, however, indicated that the witness had been in the washroom at the time of the shooting, but the officer who made the report testified that he realized his report was erroneous when he later heard the witness' statement being given to an assistant State's Attorney six hours after the shooting. A prior consistent statement of the witness was admitted to rehabilitate the witness' testimony. The court held that where there is doubt as to whether an impeaching statement was ever made, a prior consistent statement may be admitted to help the jury decide whether the impeaching statement was in fact made. The court also held that the statement was proper to rebut the inference of recent fabrication raised by the defense.

Clearly, the facts of this case are distinguishable from *Rodriguez*. The only prior statement which arguably would allow the exception noted in *Rodriguez* to be applicable here was the testimony by Officer Nelson that he responded to an "attempt rape" call. However, neither Officer Nelson's testimony nor the testimony of any other witness claimed that the victim had ever stated that the defendants attempted to rape her. Thus, unlike *Rodriguez*, where the police report, indicating that the witness had not observed the shooting, strongly inferred that the witness had actually made such a statement, here there is no indication that the "attempt rape" call was related to any statement made by the victim to the police. In fact, the testimony shows that the victim was not the person who initially reported the crime to the police. Therefore, we cannot find that a doubt was raised concerning whether the victim ever made such an impeaching statement which would trigger the claimed exception.

The State also maintains that the complained-of statements were admissible as spontaneous declarations. For a statement to be considered admissible as a spontaneous declaration, three elements must be present: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence. (*People v. Robinson* (1978), 73 Ill. 2d 192, 199, 383 N.E.2d 164.) Moreover, while time elapsed is material in determining spontaneity, it is

not controlling, and a court must determine from the entirety of surrounding circumstances whether there was opportunity for reflection and invention. (*People v. Chatman* (1982), 110 Ill. App. 3d 19, 26, 441 N.E.2d 1292.) Furthermore, statements made in response to a general inquiry as to what occurred may nonetheless be spontaneous declarations. (*People v. Grover* (1983), 116 Ill. App. 3d 116, 120, 451 N.E.2d 587.) However, repetition or discussion of the facts removes the immediacy required for spontaneous declarations. *People v. Robinson* (1978), 73 Ill. 2d 192, 199.

Applying the above principles to the case at bar, we have no difficulty in finding, and indeed the defendants all but concede, that the victim's statement that she was robbed and beaten, made to Mrs. Jones seconds after the robbery ended, was admissible as a spontaneous declaration. In the same vein, we clearly cannot find that the victim's testimony concerning what she told Mrs. Reid about the robbery nine months later was a spontaneous declaration.

 The other prior consistent statements, likewise, are not spontaneous declarations. Although we have considered the State's contentions that these statements were all made within one-half hour to 45 minutes after the robbery and the fact that the witness was visibly upset, our consideration of the entirety of the circumstances surrounding the statements convinces us that the statements lacked the immediacy required. When Cassandra Davis telephoned the victim, she did not blurt out the details of the crime, but volunteered them only upon Cassandra's inquiry as to what had happened. We note also that this was at least the third time the victim had made an account of the crime and that the victim had the presence of mind to ask Cassandra the names of the defendants. In addition, her very detailed account of the robbery to the police was a repetition and apparently the first mention of the use of knives by the defendants. As these latter statements were repetitions made some time after the event and in response to questioning, we conclude that they were not spontaneous declarations.

The State also contends that admission of the prior consistent statements was proper to rebut defendants' charge that the victim's testimony was fabricated or that she was motivated to testify falsely. We cannot agree.

 █ It is well settled that prior consistent statements are admissible only to rebut a *recent* fabrication or motivation to testify falsely. (*People v. Emerson* (1983), 97 Ill. 2d 487, 501, 455 N.E.2d 41.) It is clear from the record in this case that, if the defense raised any inference, it was that the victim's story was fabricated from the very

start, especially with respect to the defendants' use of knives. We therefore conclude that the prior consistent statements were not admissible for the claimed purpose. As none of the exceptions to the rule barring the admission of prior consistent statements are applicable to the instant facts, we conclude that their admission in this case was error.

## III

The State also contends that the errors discussed above, even if improper, did not play a material role in defendants' convictions in light of the overwhelming evidence of defendants' guilt. While we may agree that each of defendants' contentions, standing alone, did not constitute reversible error, when considered together each compounds the other. Accordingly, we cannot say that, when considered as a whole, such errors were harmless or that they did not contribute to defendants' convictions. *Cf. People v. Connors* (1980), 82 Ill. App. 3d 312, 322, 402 N.E.2d 773.

In summary, while we find that the victim's testimony was sufficient to sustain the defendants' convictions, the (1) admission of "other crimes" evidence, (2) inference of guilt raised by the victim's testimony concerning Mrs. Reid's apology, and (3) gross corroboration of the victim's testimony by improper prior consistent statements severely prejudiced the defendants' rights to a fair trial. Our determination that the errors discussed mandate a new trial in this case precludes the necessity of reviewing the defendants' remaining claims of error.

For all of the above reasons, the judgment of the circuit court of Cook County finding defendants guilty of armed robbery is reversed and this cause is remanded for a new trial.

Reversed and remanded for a new trial.

JOHNSON and ROMITI, JJ., concur.