THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RICHARD PARTIN, Defendant-Appellant.

First District (5th Division)   No. 85—3124

Opinion filed May 29, 1987.

PINCHAM, J., dissenting.

Paul P. Biebel, Jr., Public Defender, of Chicago (Kathleen M. Pantle, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Joan E. Disis, and Caroline Koplin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant, Richard Partin, was found guilty of indecent liberties with a child (Ill. Rev. Stat. 1981, ch. 38, par. 11—4(a)(2)) and child pornography (Ill. Rev. Stat. 1981, ch. 38, par. 11—20(a)) and sentenced to a term of 15 years' imprisonment in the Illinois Department of Corrections. He now appeals, contending that the trial court erroneously allowed testimony of other crimes into evidence and that the sentence imposed was excessive. For the reasons set forth below, we affirm.

At trial, complainant testified that he met defendant in the fall of 1979 at the John Maloney Funeral Home in Chicago where he was seeking a job. Defendant hired him to perform general maintenance work during the evening, such as mopping floors and dusting, and paid him $10 to $15 per job. Complainant continued working for defendant through 1982 and, in July 1982, when he was 14 years old, he visited defendant in his apartment, located on the second floor of the funeral home. He asked defendant what he could do to build up his body, and defendant replied that if he ate the right food and exercised he could build himself up. Defendant offered to help him and took his photograph with a Polaroid camera while complainant was fully clothed and seated in a chair.

Defendant then instructed complainant to take his clothes off and stand by the bed. Complainant testified that he agreed to do so because defendant often told him that he had the power to execute people, and he was afraid of defendant. After complainant had undressed, defendant used a cloth tape measure to measure parts of his body and then wrote these measurements on a legal pad. After measuring complainant's arm, leg and chest, defendant began to rub complainant's penis for two to three minutes until complainant sustained an erection; defendant then measured complainant's penis and recorded this measurement. Defendant also photographed complainant while he was naked and told him how and where to pose. These three

photographs, as well as the one taken while complainant was fully clothed, were later introduced into evidence.

After he had been photographed, complainant dressed, and defendant told him not to tell anyone what had occurred. Complainant testified that he was frightened of defendant and did not inform his parents or the police of what had happened at that time. He continued working at the funeral home for a short time thereafter and never spoke to any of the other employees there about defendant.

The State also called S.B. as a witness. After defense counsel moved to prevent his testimony, the trial court allowed him to testify. S.B. stated that in August 1982, when he was 14 years old, complainant introduced him to defendant and defendant hired him to take over complainant's job after complainant quit. Defendant told S.B. that he was to clean up after wakes and to dust and vacuum once a week after John Maloney left the funeral home.

Defendant later informed S.B. that he was preparing a study on adolescents and would be taking measurements of S.B.'s body for the study. Although S.B. initially refused, in September or October 1982 S.B. agreed to go to defendant's room in the funeral home for the measurements. Defendant asked S.B. to undress and then measured S.B.'s erect and nonerect penis. At a subsequent visit, defendant measured S.B.'s nonerect penis and then, after they "masturbated each other," measured S.B.'s erect penis. S.B. continued to work for defendant at the funeral home until May 1983 and had sexual contact with him about once a week until leaving the job. During two of S.B.'s visits to defendant's apartment, defendant showed him the photographs he had taken of complainant while he was naked.

J.C., another State witness who also testified over defendant's objections, stated that his mother had worked at the Maloney Funeral Home and that he obtained a job there working for defendant. He was paid by defendant and never received a check from John Maloney. During the summer of 1982, when he was 14 years old, J.C. visited defendant's apartment at the funeral home to talk to defendant. Defendant rubbed J.C.'s penis with his hand. J.C. continued to have these encounters with defendant once a week until January 1984, when he left his job at the home. During his employment, he was shown the pictures defendant had taken of complainant, which defendant kept in an urn on his desk, and noticed that defendant had an Instamatic camera.

The final witness, Samuel Christian, a youth officer for the Chicago police department, testified that on March 27, 1984, he and his partner, Brian Killacky, executed a search warrant for defendant's

apartment at the Maloney Funeral Home. The warrant was obtained as a result of an investigation which involved another youth, E.B. The officers seized several items from defendant's apartment, including a Polaroid camera and pictures of naked youths—the four photographs of complainant among them—and took defendant into custody. They brought defendant to the station, processed him, and, after advising him of his *Miranda* rights, questioned him about several photographs they had found. Defendant told the officers that some of the photographs were of complainant and that he had taken them. He stated that he touched the boy's penis to cause an erection. Defendant later repeated these statements to an assistant State's Attorney who prepared a written statement.

After closing arguments, the jury found defendant guilty of indecent liberties with a child and child pornography. Defendant's motion for a new trial was denied, and he was sentenced to a term of 15 years' imprisonment. After sentence was imposed, defendant pleaded guilty to indecent liberties with a child for offenses committed with S.B. and J.C. and was sentenced to two 10-year terms of imprisonment to run concurrently with the 15-year term he received in the case at bar.

Defendant now contends that the trial court committed reversible error when it allowed testimony of other offenses by defendant into evidence. The State asserts that defendant waived this issue by failing to include it in his motion for a new trial. Alternatively, the State argues that even if defendant had not waived the issue, the trial court did not err in allowing the testimony of S.B. and J.C., who were victims of crimes similar to the crime of which complainant was a victim; *i.e.*, their testimony was admissible as evidence of a common scheme or design or *modus operandi*.

■ We first observe that the general rule is that failure by a defendant to raise an issue in a written motion for a new trial waives that issue and it cannot constitute grounds for reversal on review. (*People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856.) A reviewing court, however, may notice plain errors or defects affecting substantial rights of a defendant even if they are not brought to the attention of the trial court. (54 Ill. 2d 280, 282, 296 N.E.2d 856.) In the instant case, we find no reason to depart from the general rule and note that even if defendant had not waived the issue of whether the contested testimony was properly admitted into evidence, the trial court's admission of this testimony into evidence would be upheld.

■ ■ Moreover, evidence of other crimes is admissible if it is relevant for any purpose other than to show the defendant's character

or propensity to commit crime. (*People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 484, 485 N.E.2d 1292.) If the evidence is relevant to prove *modus operandi*, knowledge, intent, lack of mistake, or that the crime charged was part of a common design, scheme or plan of the defendant, it is admissible. (138 Ill. App. 3d 481, 484-85, 485 N.E.2d 1292.) It is within the discretion of the trial court to decide whether evidence of other crimes is relevant to a material issue in the case and whether the probative value of the evidence outweighs its prejudicial effect; a reviewing court will overturn the trial court's decision to admit such evidence only if there has been a clear abuse of discretion. *People v. Fuller* (1983), 117 Ill. App. 3d 1026, 1036, 454 N.E.2d 334.

■■ ■ In the case at bar, the trial court admitted into evidence the testimony of S.B. and J.C. under the common design or scheme and *modus operandi* exceptions to the general rule requiring exclusion of evidence of other offenses. Many courts, like the trial court here, use the terms "common design or scheme" interchangeably with "*modus operandi*" (see *People v. Fuller* (1983), 117 Ill. App. 3d 1026, 454 N.E.2d 334; *People v. Burgin* (1979), 74 Ill. App. 3d 58, 392 N.E.2d 251), but the terms have separate and distinct meanings. "Common design" refers to a larger criminal scheme of which the crime charged is only a portion and is often relevant to show the motive for the crime charged. (*People v. Barbour* (1982), 106 Ill. App. 3d 993, 999-1000, 436 N.E.2d 667.) "*Modus operandi*" means method of working and refers to a pattern of criminal behavior that is so distinctive that separate crimes are recognizable as the handiwork of the same wrongdoer; it is useful in showing that the accused is the perpetrator of the crime charged. (106 Ill. App. 3d 993, 999-1000, 436 N.E.2d 667.) Here, defendant contends that the testimony of S.B. and J.C. did not fall within either the common design or *modus operandi* exceptions, while the State asserts that the evidence falls under both exceptions.

■ ■ Evidence of a separate offense is found to be relevant and admissible as proof of *modus operandi* only upon a strong and persuasive showing of similarity of the crime charged and the separate offense; there must be a substantial and meaningful link between the offenses being compared. (*People v. Tate* (1981), 87 Ill. 2d 134, 141, 143, 429 N.E.2d 470.) Although the similarities of the offenses being compared need not be unique, some distinctive feature not common to most offenses of that type must be present to show *modus operandi*. (87 Ill. 2d 134, 142-43, 429 N.E.2d 470.) The State must prove that another offense did take place and was committed by defendant, but the proof need not be beyond a reasonable doubt. *People v. Fuller*

(1983), 117 Ill. App. 3d 1026, 1036, 454 N.E.2d 334.

■■ In the case at bar, the testimony of S.B. and J.C. established that they were victims of lewd fondling committed by defendant. We find that their testimony was admissible as evidence of defendant's *modus operandi*. All of defendant's victims were adolescent males, 14 or 15 years of age, whom he had hired to work for him at the funeral home to do general maintenance or custodial duties. He would fondle their genitals until they obtained an erection and, for two of the victims, he measured their erect penises. He always committed these offenses in his room at the funeral home, usually in the evening, and the incidents occurred during the summer and autumn of 1982. Defendant took several photographs of complainant, who was naked, showed them to the other two boys, and requested them to pose for him. We find the offenses against complainant, S.B., and J.C. are so substantially similar that they show a common method of procedure and are relevant to prove defendant's *modus operandi*. *People v. Burgin* (1979), 74 Ill. App. 3d 58, 69, 392 N.E.2d 251.

■■ Defendant also contends that the testimony of S.B. and J.C. was not admissible to show his *modus operandi* for the offense of child pornography against them. While defendant may not have committed the offense of child pornography against these two victims, we find that their testimony was admissible as evidence of defendant's *modus operandi* for the offense of indecent liberties with a child; defendant's failure to photograph S.B. and J.C. did not weaken the link of similarities between the offenses committed against them and the offense committed against complainant. Exact identity of the offenses is not required to admit evidence of other crimes. (*People v. Fuller* (1983), 117 Ill. App. 3d 1026, 1035, 454 N.E.2d 334.) In *People v. Anderson* (1982), 108 Ill. App. 3d 563, 439 N.E.2d 65, for example, the reviewing court upheld the trial court's admission of evidence that defendant committed similar attacks against women other than the complainant in affirming defendant's convictions for attempted murder, armed robbery, and aggravated battery even though he had not shot either of the other two victims and only one of the victims had been raped.

We further find that the testimony of S.B. and J.C. was properly admitted as evidence of a common design or scheme. Clearly, defendant planned to hire male adolescents to work directly for him, not the owner of Maloney's Funeral Home, and to lure them to his room to engage in lewd acts. Although he only photographed complainant, he requested the other two boys to be photographed and showed them his camera as well as the pictures of complainant.

■■■■■ Defendant next contends that even if the contested testimony was admissible as evidence of a common design or *modus operandi*, it is irrelevant and that any probative value it might have was outweighed by its prejudicial effect. In Illinois, any evidence which tends to prove a fact in issue is relevant. (*People v. Burgin* (1979), 74 Ill. App. 3d 58, 69, 392 N.E.2d 251.) Defendant placed in issue whether a crime was committed and who committed it. We find that the testimony of S.B. and J.C. was probative and relevant as to those issues and that its probative value was not outweighed by any prejudice it may have created in the jury against defendant. The trial court carefully limited the testimony to offenses which occurred around the same time period in which the offense occurred against complainant and instructed the jury to consider the testimony only for the limited purpose for which it was admitted, thereby alleviating any potential prejudice. (See *People v. Carter* (1981), 98 Ill. App. 3d 720, 724, 424 N.E.2d 367.) The trial court must be afforded some latitude in assessing the relevance of testimony to be admitted (*People v. Matthews* (1985), 137 Ill. App. 3d 870, 875, 485 N.E.2d 403), and we find that the trial court here did not abuse its discretion when it found the contested testimony to be relevant and admitted it into evidence. Finally, although the dissent herein concludes that the evidence of other crimes was unfair and unnecessary, we note that the issue in this appeal is not the fairness of the evidence or its necessity but rather its admissibility under settled rules of evidence.

Defendant also contends that the sentence imposed by the trial court was excessive and that the court failed to properly weigh the factors favoring mitigation of his sentence. The State asserts that the trial court properly considered the seriousness of the offense of which defendant was found guilty with all mitigating factors and correctly imposed the maximum sentence.

Defendant was convicted of indecent liberties with a child (Ill. Rev. Stat. 1981, ch. 38, par. 11—4(a)(2)) and child pornography (Ill. Rev. Stat. 1981, ch. 38, par. 11—20(a)), offenses punishable by a sentence of not less than four years or more than 15 years (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(4)). After a sentencing hearing during which two witnesses testified for the State, the trial court sentenced defendant to a term of 15 years' imprisonment.

At the hearing, the mother of a fourth boy, E.B., identified pictures of her son taken by defendant. Youth officer Samuel Christian testified that those photographs, which showed E.B. in various states of undress and sexual arousal, were recovered from defendant's room at the funeral home on March 28, 1984. Defendant admitted to the of-

ficer that he took the photographs and performed sexual activities on E.B. However, defense counsel requested that the trial court consider defendant's presentence investigation report which showed that defendant was married, had no criminal record, was steadily employed, was a graduate of the University of Chicago, and had heart trouble for which he took medication. Counsel also stated that there was no evidence that any of defendant's victims were permanently injured by his acts or that defendant had any record of violence and requested that defendant receive the minimum sentence. After hearing the parties' arguments, the trial court imposed a sentence of 15 years' imprisonment based on its consideration of the nature of the offenses against defendant and the presentence investigation report.

▮▮▮▮▮ Defendant contends that the trial court did not weigh the factors in aggravation or mitigation of his sentence but instead disregarded any mitigating factors because they failed to absolve defendant of the crime charged. Although the Illinois Constitution requires the trial court to determine all penalties both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship (Ill. Const. 1970, art. I, sec. 11), a trial court is not required to give greater weight to the possibility of rehabilitation than to the seriousness of the offense. (*People v. Green* (1985), 136 Ill. App. 3d 361, 368, 483 N.E.2d 606.) There is a strong presumption that a trial court's sentencing decision is based upon proper legal reasoning, and the court will be presumed to have considered any evidence of mitigation which is before it. (*People v. Goodman* (1983), 116 Ill. App. 3d 125, 127-28, 451 N.E.2d 607.) The court has no obligation to recite and give value to each fact presented at the sentencing hearing. (116 Ill. App. 3d 125, 128, 451 N.E.2d 607.) The trial court is the proper forum in which to determine a suitable sentence, and the trial court's decision regarding sentencing is entitled to great deference and weight. (*People v. La Pointe* (1982), 88 Ill. 2d 482, 492-93, 431 N.E.2d 344.) This decision will be modified by a reviewing court only if there has been an abuse of discretion. *People v. Williams* (1985), 130 Ill. App. 3d 758, 762, 474 N.E.2d 1330.

We find defendant's contention that the trial court failed to weigh the aggravating and mitigating factors to be without merit and find no abuse of the trial court's discretion. While at one point the court stated that "[t]he only thing I am concerned with is the nature of the charges you are accused of," the court's next statement involved the consideration of defendant's health condition. The court also stated that the presentence investigation report was considered in making its determination. Clearly, the court considered all the aggravating

and mitigating factors before it in the sentencing hearing and determined that defendant's behavior justified the imposition of the maximum penalty for the offenses of which he was found guilty. Because this penalty is within the statutory limits and the trial court did not abuse its discretion in imposing the term of imprisonment, we find no reason to vacate or reduce defendant's sentence.

Accordingly, the judgment of the circuit court is affirmed. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal.

Affirmed.

LORENZ, J., concurs.

JUSTICE PINCHAM, dissenting:
I dissent. Although I am of the opinion that the 15-year imprisonment sentence was not excessive but was appropriate for the dastardly sex offenses the defendant committed upon E.B., minor No. 1, for which the defendant was on trial, I am also of the opinion that the admission of the evidence of the defendant's commission of other sex offenses upon S.B. and J.C., minors Nos. 2 and 3, for which the defendant was not on trial, circumvented the letter and spirit of the defendant's constitutional rights to be informed of and tried on the accusation alleged in the indictment, against being twice placed in jeopardy for the same offense, to due process, to fundamental fairness, and to a fair trial. The defendant's conviction should therefore be reversed and the cause should be remanded for a new trial.

The State presented adequate and unrebutted evidence to establish the defendant's guilt beyond a reasonable doubt of the commission of the sex offenses upon E.B., minor No. 1. That evidence was the testimony of E.B., the pornographic pictures of E.B. which were recovered from the defendant's possession and corroborated E.B.'s testimony, and the defendant's confession. But there is not one set of evidentiary rules for the guilty and another set of rules for the innocent. A defendant, guilty or innocent, is entitled to a fair, orderly, and impartial trial in accordance with the law of the land. The defendant in this case did not receive such trial. *People v. Galloway* (1956), 7 Ill. 2d 527, 536, 131 N.E.2d 474; *People v. Savage* (1967), 84 Ill. App. 2d 73, 79, 228 N.E.2d 215.

The law does not fluctuate in order to more certainly reach a guilty finding. The prejudicial and inadmissible evidence of the defendant's commission of other sex offenses upon S.B. and J.C., mi-

nors Nos. 2 and 3, might be appropriately characterized as the prosecutor's attempt to gild the lily, overtry his case, and overkill in the adversarial proceedings. The greater portion of the trial evidence was about the defendant's commission of the sex offenses upon S.B. and J.C., minors Nos. 2 and 3.

Count I of the indictment No. 84-4395 in the case at bar alleged, "[o]n or about July 1, 1982 and continuing on through July 31, 1982 at and within the County of Cook, Richard Partin a male person of the age of seventeen years and upwards committed the offense of indecent liberties with a child in that he, with the intent to arouse and satisfy his sexual desires, lewdly fondled and touched E.B., [minor No. 1], a child under the age of sixteen years, in violation of Chapter 38, Section 11—4—A(2) of the Illinois Revised Statutes 1983 ***."

Count II of the indictment alleged that on the aforesaid dates and place, "Richard Partin committed the offense of child pornography in that he photographed child pornography, to wit: he photographed E.B., [minor No. 1], a child under the age of sixteen, while he was nude, in violation of Chapter 38, Section 11—20—A—B(2) of the Illinois Revised Statutes 1983 ***."

In another indictment, No. 84-4410, the defendant was charged with the offense of indecent liberties with S.B., minor No. 2, on or about February 9, 1983. A third indictment, No. 84-4397, charged the defendant with indecent liberties with J.C., minor No. 3, on September 7, 1983.

Prior to the jury selection, the following colloquy occurred:

"[Assistant State's Attorney]: [T]he State plans on calling all victims involved in the cases before you, besides the victim in the elected case, *to show—scheme and pattern.*

\* \* \*

[Defendant's attorney]: That, of course, your Honor, I would object to.

THE COURT: [Y]ou can show correlation between the activity involved with these other individuals; point of time, and in— of the changes before this Court, and common scheme, plan or design it is constantly been held that it is admissible and I will not restrict the State with reference to that *** other knowledge of that kind can only be used *for purposes of showing common scheme, plan or design.*" (Emphasis added.)

The State acknowledged in its brief before this court that the trial court's basis for admitting evidence of the defendant's commission of the other sex offenses for which the defendant was not on trial was to show common scheme, plan, or design. Then, apparently recognizing

that common scheme, plan or design is legally an unsound basis for admitting evidence of the defendant's commission of the other sex offenses, the State abandoned the common scheme, plan, and design basis in its brief and shifted to a *modus operandi* basis to justify the admission of the evidence of the commission of the other sex offenses by the defendant.

The State was not authorized to join the different alleged sex offenses upon the three minors in the same indictment because the offenses were not based on the same act or on two or more acts which were part of the same comprehensive transaction, which is a prerequisite for a joinder of offenses under section 111—4(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 111—4(a)). See *People v. Harris* (1986), 147 Ill. App. 3d 891, 498 N.E.2d 621 (Pincham, J., dissenting).

Section 114—7 of the Code of Criminal Procedure (Ill. Rev. Stat. 1985, ch. 38, par. 114—7) provides: "The court may order 2 or more charges to be tried together if the offenses and the defendants could have been joined in a single charge." The trial court was not authorized in the case at bar to order the alleged offenses against the three minors to be tried together under section 114—7. The different alleged offenses against the three minors could not have been joined in a single charge because they were not part of the same comprehensive transaction, which is a prerequisite under section 111—4(a). Because the alleged offenses against the three minors were not and could not have been joined in a single indictment, the defendant could not make a motion for a severance based on a prejudicial joinder of the offenses under section 114—8. (Ill. Rev. Stat. 1985, ch. 38, par. 114—8.) That section provides: "If it appears that a defendant or the State is prejudiced by a joinder of related prosecutions or defendants in a single charge or by joinder of separate charges or defendants for trial the court may order separate trials, grant a severance of defendants, or provide any other relief as justice may require."

At trial, the State's first witness was the mother of E.B., minor No. 1, who testified as to E.B.'s birthdate. E.B. then testified that in the fall of 1979, when he was 10 years old, the defendant hired him to work in general maintenance at the funeral home where the defendant was employed and lived. E.B. worked there from 1979 to the second week in July 1982, at which time E.B. went to the defendant's room and talked to him about body building. The defendant told E.B. if he ate the right food and exercised he would be able to build his body up. The defendant took a picture of E.B., who was clothed. The defendant told E.B. to take his clothes off and E.B. did. The defend-

ant measured various parts of E.B.'s body with a cloth tape measure and recorded the measurements on a yellow pad. The defendant then rubbed E.B.'s penis and genitals and told E.B. he was doing that to measure his penis. The defendant measured E.B.'s erect penis and recorded the measurements on the pad. While E.B. was nude, the defendant directed E.B. to pose and the defendant took pictures of him. E.B. identified the pictures that the defendant took of him as State's exhibit No. 1, a picture of E.B. while dressed, and Nos. 2, 3 and 4 which were nude pictures of E.B. The defendant told E.B. not to tell anyone about the pictures or measurements. E.B. testified that July 1982 was three months before his 15th birthday and that he had not finished the eighth grade.

E.B.'s direct-examination testimony constituted 18 pages of the trial record and his cross-examination testimony constituted 11 pages.

At the conclusion of E.B.'s testimony, the defendant's attorney again objected to the testimony of other "supposed victims of Mr. Partin. *** *My objection is that they cannot be brought in on this case, despite the Court's ruling on common scheme, pattern, and design.* *** The State is going to inflame the jury and mislead them ***. It shows that if somebody ten times [sic], they are bound to be guilty at least once. I see no other purpose than that is what the State is trying to do." (Emphasis added.)

The assistant State's Attorney then gave a litany of grounds for the admission of evidence of the defendant's commission of the offenses against S.B. and J.C., minors Nos. 2 and 3. The assistant State's Attorney stated:

"The ability for [1] more than one witness to identify this defendant, [2] more than one witness to place this defendant in a certain location, [3] one or more witness to be able to identify the pictures that have been introduced at least for the purpose of identification before this witness, and later presumably to the jury itself.

If there is [4] a scheme [5] in which other young men of similar age, [6] same location, [7] at a similar time, Your Honor, which the People intend to produce with these other witnesses, counsel has known about them. I think it falls within common scheme, [8] modus operandi, Your Honor.

* * *

The next witness is S.B., [minor No. 2] Your Honor. He is of similar age as the victim in this cause that has already testified.

He would also testify that he took the job that the victim

had with [the] funeral home, same duties, same arrangements, and Your Honor, he was [9] molested in the same fashion.

\* \* \*

THE COURT: [T]he court is well aware of the limitations heretofore imposed whereby a court would allow other incidents to be used for purposes of establishing common scheme, plan, or design. It does not require that any victim or person testifying with reference to this had in fact been convicted of the charges.

The only thing is for the purpose of showing the jury that in fact there is conduct taken by the defendant involved herein which can be shown to have occurred in other situations, which were common in nature and could be predicated upon that, \*\*\*. It has been allowed to be presented with reference to matters similar in nature, \*\*\* if in fact it could be established that it is in close proximity of time, the nature of the incidents that occurred herein. \*\*\* I will note your objections, [and] overrule them."

G.B. was then called as a State's witness. She testified that she was the mother of S.B., minor No. 2, and that S.B. was born on November 23, 1967.

Next, S.B. was called as a State's witness. The trial court did not inform the jury on the supposed limited purpose of S.B.'s testimony.

S.B. testified that he and E.B., minor No. 1, were high school classmates, that he was introduced to the defendant by E.B. in August 1982 when he was 14 years old, and that at the end of 1982 he took over E.B.'s job with the defendant at the funeral home.

At a sidebar conference out of the hearing of the jury, the assistant State's Attorney, over the defendant's objection, was allowed to ask S.B. leading questions. In the jury's presence, S.B. testified:

"[Assistant State's Attorney] Q. During 1982, did you have any sexual contact with Richard Partin?

A. Yes.

\* \* \*

Q. Did Mr. Partin ever talk to you about measurements?

A. Yes.

Q. And what year was that when Mr. Partin talked to you about measurements?

A. That was at the end of 1982.

Q. And could you elaborate to the ladies and gentlemen of the jury what Richard Partin said to you regarding measurements?

A. He told me that he was doing a study on adolescence, and that he would be taking measurements of my body for the study.

Q. Did Mr. Partin tell you what part of your body that he wanted to measure?

A. Yes.

Q. What part was that?

A. The—all parts of the body, including the genitals."

S.B. testified that he did not comply with the defendant's first request but that he complied with the second and that while his pants and underwear were off the defendant took measurements of his flaccid and erect penis in his room in the funeral home around the end of 1982. S.B. further testified:

"[Assistant State's Attorney] Q. What did Mr. Partin do in the last incident regard to measurements?

A. In the last incident, he measured my non-erect penis and then we masturbated each other, and then he measured my erect penis.

Q. Now, did Mr. Partin take any notes at any time he did any measurements with you and write them down?

A. I didn't see him do that.

Q. Did Mr. Partin have physical contact with his hands on your penis after 1982?

A. Yes.

* * *

Q. Up until the time of May 1983, that you left employment with Mr. Partin, did you continue to have sexual contact with Mr. Partin where he would place his hands on your penis?

A. Yes.

Q. What frequency was that sir?

A. Approximately once a week."

S.B. then testified that after he saw the defendant in May 1983, he next saw the defendant that summer. When asked by the assistant State's Attorney where he saw the defendant, the defendant's attorney objected. The following colloquy occurred out of the presence and hearing of the jury:

"THE COURT: What is your offer of proof with reference to that aspect?

[Assistant State's Attorney]: Your Honor he was re-employed in the Summer of '83, and that the same type of touching occurred in his sixteenth birthday.

* * *

[Defense attorney]: To allow this witness to testify about similar events, he has already done so. He has done it for two specific incidents, probably more. We are getting into more and that will mislead the jury.

THE COURT: I don't think it is necessary to go into it any further. I think they have been sufficiently advised there has been a common scheme and design, and I think you are going a little bit much with reference to this matter."

S.B. resumed his testimony before the jury and further testified that the defendant had a camera and asked him to take nude pictures and that he refused. The defendant showed him State's exhibits Nos. 1 through 4, which were nude pictures of E.B., minor No. 1, with an erect and flaccid penis.

S.B. was then cross-examined. S.B.'s direct-examination constitutes 19 pages of the trial record and his cross-examination constitutes 12 pages. The trial court did not instruct the jury on the limited purpose for which S.B.'s testimony was offered or on the limited purpose for which it could be considered by the jury.

Before the next witness was called, the assistant State's Attorney argued that the testimony of J.C., minor No. 3, should be admitted not to establish design, plan, scheme, or *modus operandi*, but to identify the defendant. The assistant State's Attorney urged:

"The People anticipate the next witness will testify that there were measurements the year before, in the Summer of 1981, and that there was rubbing of the penis in the Summer of 1982, similar to the victim, and that the measurements were—also in the same location by the same person, that the measurements were so unique that *it helps to identify this defendant*. The fact again the witness also had the rubbing of the penis during the same time as the victim. We ask that it be allowed in.

\* \* \*

*It is so unique that it goes to the identification of this defendant*." (Emphasis added.)

In *People v. Barbour* (1982), 106 Ill. App. 3d 993, 1000, 436 N.E.2d 667, the State contended that evidence of two prior rapes by the defendant established the defendant's identity in the third rape for which he was on trial and was convicted. This court stated: "*This claim is preposterous*." (Emphasis added.) The identification of the defendant in the case at bar, as in *Barbour*, was not an issue. Each minor, E.B., S.B., and J.C., was well acquainted with the defendant. Each knew where the defendant lived and worked and each had

worked for him over an extended period of time. The assistant State's Attorney did not explain to the trial court how evidence of the defendant's commission of the sex offenses with J.C., minor No. 3, would establish the defendant's identity as the alleged offender with E.B., minor No. 1.

In response to the assistant State's Attorney's request to admit testimony of J.C., minor No. 3, to "identify this defendant," the trial court stated:

"[T]o overtry this matter does not accomplish anything except bring in certain matters that I don't want the jury to consider with reference to this case.

I will advise you both that I am going to indicate to the jury that the matters that are presented are not matters of litigation involved here, but presented for the limited purpose and should only be considered for a limited purpose."

The trial court did not then or at any other time properly instruct the jury on the limited purpose for which this evidence was admitted or the limited purpose for which the jury could consider it.

The next witness called by the assistant State's Attorney was M.C., who testified that she was the mother of J.C., minor No. 3, and that he was born October 4, 1967.

The State's next witness was J.C., minor No. 3, who testified that he did odd jobs for the defendant during the summer of 1982 at the funeral home where the defendant worked and lived. He had sexual contact with the defendant at least once a week. The defendant would rub J.C.'s penis with his hands in the defendant's upstairs bedroom. J.C. knew and attended school with E.B., minor No. 1. The defendant showed J.C. the nude pictures of E.B., State's exhibits Nos. 2 through 4.

The direct and cross-examination of J.C. constitutes nine and eight pages, respectively, of the trial record.

Chicago police department youth Officer Samuel Christian was the next State's witness. He testified, "[W]e investigate major crimes, sex crimes against children, [and the] exploitation of children in the city of Chicago and surrounding areas." On March 27, 1984, Officer Christian and his partner executed a search warrant in the defendant's presence at his residence in the funeral home and "recovered a camera, *a number of photographs of naked youths*, personal papers, diary, some books, [and] some magazine articles." (Emphasis added.) State's exhibits Nos. 1 through 4 (of E.B., minor No. 1) were among the photographs that were recovered. The State's group exhibits 5A through I were copies of State's exhibits Nos. 1 through 4 and, Offi-

cer Christian testified, were "found inside a white box inside a book called Confession of Saint Augustine." Officer Christian also recovered a Polaroid camera from the defendant's residence, State's exhibit No. 6. The defendant identified the pictures of E.B., minor No. 1, to Officer Christian and stated to him that he had taken the pictures two years previously when E.B. was in the eighth grade and that he touched E.B.'s penis to cause it to erect.

The State rested.

Of the seven witnesses called by the State, only two, E.B., minor No. 1, and his mother, testified in support of the alleged E.B. offenses for which the defendant was on trial. Four witnesses, S.B., minor No. 2, and his mother, and J.C., minor No. 3, and his mother, testified about offenses committed by the defendant upon S.B. and J.C. for which the defendant was not on trial. The seventh witness, Officer Christian, testified about the seizure of the camera and E.B.'s pictures, State's exhibits Nos. 1 through 4, in the defendant's apartment and the defendant's arrest and confession. Of the 110 pages of trial testimony presented by the State, only 30 pages were in support of the alleged offenses against E.B., minor No. 1, for which the defendant was on trial. The remaining 80 pages of trial testimony were of the defendant's commission of offenses upon S.B. and J.C., minors Nos. 2 and 3, for which the defendant was not on trial. The greater portion of the trial testimony presented by the State was devoted to proving commission of offenses by the defendant for which he was not on trial.

The majority is mistaken when it states, "the trial court carefully limited the testimony to offenses which occurred around the same time period in which the offense occurred against the complainant [E.B., minor No. 1]." (156 Ill. App. 3d at 372.) The indictment alleged that the offenses were committed upon E.B., "on or about July 1, 1982 and continuing through July 31, 1982." E.B. testified that it was the second week in July 1982 that the defendant committed the various acts upon him. S.B., minor No. 2, testified, however, that he took over E.B.'s job with the defendant at the funeral home at the end of 1982 and that approximately once a week from the end of 1982 to May 1983 he and the defendant masturbated each other. J.C., minor No. 3, testified that he had sexual contact with the defendant at least once a week during the summer of 1982. Thus, the S.B. offense, which occurred from the end of 1982 to May 1983, and the J.C. offenses, which occurred during the summer of 1982, were far removed from the mid-July 1982 E.B. offenses.

The sixth amendment to the Constitution of the United States

provides, "In all criminal prosecutions, the accused shall enjoy the right *** to be informed of the nature and cause of the accusation ***." (U.S. Const., amend. VI.) The due process clause of the fourteenth amendment to the Constitution of the United States, which makes the sixth amendment binding upon the States, provides "[N]or shall any State deprive any person of life, liberty or property, without due process of law ***." (U.S. Const., amend. XIV.) It is provided in article 1, section 8 of the Illinois Constitution, "In criminal prosecutions, the accused shall have the right to appear and defend in person and by counsel; to demand the nature and cause of the accusation and have a copy thereof ***." (Ill. Const. 1970, art. I, sec. 8.)

A fundamental purpose of the constitutional right of a defendant to be informed of and to demand the nature and cause of the accusation against him is to enable the defendant to prepare and present a defense and to limit and confine the lines of battle at trial. This constitutional protection is circumvented when the State is allowed to expand the boundaries of the trial combat zone by presenting evidence of the defendant's commission of other offenses for which the defendant is not on trial, under the pretense of establishing the defendant's common scheme, plan, identification, design or *modus operandi*. The nature and cause of the accusation for which the defendant was on trial in the case at bar and the only alleged offenses the defendant was called upon by the indictment to defend against were the alleged offenses upon E.B., minor No. 1. In my judgment, the defendant's constitutional right to be informed of and tried on the accusation against him as alleged in the indictment should not have been thwarted by requiring the defendant to simultaneously defend against evidence of his alleged offenses upon S.B. and J.C., minors Nos. 2 and 3.

The assistant State's Attorney resorted to practically every conceivable basis, *i.e.*, plan, design, common scheme, *modus operandi* and identification of the defendant, for the admission of the evidence of the defendant's commission of the alleged sex offenses upon S.B. and J.C., minors No. 2 and 3. If there was any question about his true motive for the admission of this evidence, the question was resolved by the assistant State's Attorney's opening and closing arguments. After telling the jury, "[T]he charges before you are indecent liberties with a child and child pornography. They are two separate charges and you may consider as such," the assistant State's Attorney then recapitulated the testimony of E.B., minor No. 1, to the jury. Immediately thereafter the assistant State's Attorney argued:

"Ladies and gentlemen, you also heard from *two other young*

*witnesses* in this case, S.B. and J.C. [minors Nos. 1 and 2].
* * *

[T]*heir testimony* is significant, and you may consider it in one very important respect. *It shows a common scheme, pattern and design on the part of the defendant, Richard Partin, to take advantage of these young people.*

And, let's consider the elements of the common scheme, pattern and design, with *all three.* Mr. Partin hired them to do odd jobs, unbeknown to Mr. Maloney, the owner of the funeral home.

With *all three,* Mr. Partin, would have them come over late in the evening, to the funeral home. With *all three,* Mr. Partin would have them come up to his apartment; with *all three,* Mr. Partin wanted to take their physical measurements.

And, with *all three,* Mr. Partin, engaged in a pattern of sexual conduct. That, ladies and gentlemen, is scheme, pattern and design.
* * *

What we are talking about is *a protected class of people; people under the age of 16 years.* And, [in] Illinois [they] are *a protected class,* both under the indecent liberties statutes, and again under the child pornography statute.
* * *

[W]hen you are younger, when you are fifteen, fourteen, thirteen, on down the line, *their experience* is shown that we don't always exercise the best judgment; and at that time, we—
* * *

We, as a community, at that time, ladies and gentlemen, have a vested interest in *protecting people* who may not use the best judgment [*sic*]; and let there be no mistake, *E.B., [minor No. 1],* and the *other individuals [minors Nos. 2 and 3]* who testified, did not use very good judgement [*sic*].

It was very poor judgement [*sic*]; but that's why we have these laws, *to protect these individuals* from sexual exploitation.

*These boys* should have known better, but *they* didn't, and that's why *we protect them,* ladies and gentlemen." (Emphasis added.)

It is clear from the assistant State's Attorney's argument, particularly that the testimony of the three minors "shows a common scheme, pattern and design on the part of the defendant, Richard Partin, *to take advantage of these young people,*" was an attempt to

disguise an improper propensity argument, *i.e.*, that the defendant must have committed the offenses upon minor No. 1 because he also committed the offenses upon minors Nos. 2 and 3.

In *People v. Grabbe* (1986), 148 Ill. App. 3d 678, 499 N.E.2d 499, a State's witness to the defendant's murder of his wife was the defendant's paramour. The witness testified that the defendant confessed to her his commission of three other murders. The State contended that these confessions were admissible for the limited purpose of explaining why the witness failed for several years to come forward and tell law enforcement authorities about the defendant's murder of his wife. Unlike in the case at bar, in *Grabbe* no evidence other than the defendant's confession was presented to establish commission of the other murders. In the case at bar, S.B. and J.C. testified that the defendant committed sex offenses upon them. Reversing the defendant's conviction, the supreme court stated in *Grabbe*:

> "Evidence that an accused has committed other crimes is inadmissible to show a propensity to commit crime. Its probative value in that respect is far outweighed because it 'overpersuades the jury' that the accused is a bad person. [Citations.] *The prejudicial effect of this type of evidence is strong where, as here, the accused is charged with murder, and the collateral offenses are murders.*
>
> * * *
>
> Defendant's admission of prior murders had no relevance to either his intent or motive in regard to the crime with which he was charged.
>
> The evidence *** merely had the purpose of 'overpersuading' the jury that defendant was a very bad person." (Emphasis added.) 148 Ill. App. 3d 678, 684-85, 499 N.E.2d 499.

It is noteworthy that in the case at bar the accused was charged with sex offenses upon a minor and that the "collateral offenses" were also sex offenses upon minors.

In *People v. Barbour* (1982), 106 Ill. App. 3d 993, 436 N.E.2d 667, this court condemned the admission of evidence of other crimes by the defendant under the pretext of *modus operandi*, stating:

> " 'The law distrusts the inferences that because a man has committed other crimes he is more likely to have committed the current crime.' (*People v. Lehman* (1955), 5 Ill. 2d 337, 342, 125 N.E.2d 506.) Where testimony has no value beyond the inferences that the defendant has a propensity for the crime charged, the testimony is excluded." 106 Ill. App. 3d 993, 1001, 436 N.E.2d 667.

In *Barbour*, the defendant was charged with the rape of the victim, who was on her first date with the defendant. The State called two additional alleged rape victims who testified that on their first date with the defendant he also raped them. The State argued that the earlier rapes showed "a common design or *modus operandi*." The exhaustive and informative language of this court in reversing the defendant's conviction in *Barbour* is most applicable to the case at bar. In *Barbour* this court stated:

"The State (and, indeed, some of the authorities) have used 'common design' and *'modus operandi'* interchangeably but the concepts are quite distinguishable. A common design refers to a larger criminal scheme of which the crime charged is only a portion. *Modus operandi* means, literally, 'method of working,' and refers to a pattern of criminal behavior so distinctive that separate crimes are recognizable as the handiwork of the same wrongdoer. (See generally McCormick, Evidence sec. 190, at 448-49 (2d ed. 1972).) A common design is frequently relevant to show the motive for the crime charged. *Modus operandi* is most useful in showing that the accused is the perpetrator of the crime charged.

There is no reason to believe that the alleged rapes are part of a common scheme. In arguing that the rapes share a *modus operandi*, the State lists approximately 19 similarities among the crimes. Some of the purported similarities are irrelevant coincidences (*e.g.*, none of the women drank heavily) and others are merely descriptive of the crime of rape (*e.g.*, force was used in all three attacks). While a showing of *modus operandi* does not require that the similarities be unique to the offenses being compared, there must be 'some distinctive features that are not common to most offenses of that type.' (*People v. Tate* (1981), 87 Ill. 2d 134, 142-43, 429 N.E.2d 470.) In the case at bar, the State has simply failed to make the 'strong and persuasive showing of similarity' required to demonstrate *modus operandi*. (*People v. Tate* (1981), 87 Ill. 2d 134, 141.) The State's lengthy list of purported similarities does not establish 'that the three alleged rapes were 'so nearly identical in method as to earmark them as the handiwork of the accused.' McCormick, Evidence sec. 190, at 449 (2d ed. 1972).

Even if the State had shown a distinctive pattern of criminal behavior, the evidence would still be inadmissible. The State appears to assume that when a clear *modus operandi* has been shown, evidence of other crimes employing the same *modus* is

automatically admissible. This assumption is incorrect and ignores a fundamental rule of evidence: 'Whatever is *relevant* is admissible.' (Emphasis added.) (*People v. Gray* (1911), 251 Ill. 431, 439, 96 N.E. 268.) To be relevant, a given fact must tend to make a proposition at issue either more or less probable. (See *People v. Gray* (1911), 251 Ill. 431, 439.) Relevance is the touchstone of admissibility and *defendant's other crimes, even those sharing a common modus operandi, are inadmissible unless the State shows that the evidence is probative of a proposition at issue.*" (Emphasis added.) 106 Ill. App. 3d 993, 999-1000, 436 N.E.2d 667.

The cases relied on by the majority in the case at bar as authority for the admission of evidence of the defendant's commission of the S.B. and J.C. offenses are not analogous to the case at bar. *People v. Burgin* (1979), 74 Ill. App. 3d 58, 392 N.E.2d 251, involved the issues of consent and identification in a rape prosecution. In *People v. Matthews* (1985), 137 Ill. App. 3d 870, 485 N.E.2d 403, the evidence of another crime was admitted to establish the defendant's identity. *Matthews* is not analogous because in the case at bar the defendant's identity was not an issue. E.B., minor No. 1, had known the defendant for a number of years and was well familiar with him. The evidence of the defendant's commission of the offenses upon S.B. and J.C., minors Nos. 2 and 3, who also had known the defendant over an extended period, was not admissible to establish the defendant's identity as the perpetrator of the alleged offenses upon E.B., minor No. 1, under a *modus operandi* theory. *Modus operandi* was an inappropriate basis for showing that the defendant was the perpetrator of the crime charged.

In *People v. Kimbrough* (1985), 138 Ill. App. 3d 481, 485 N.E.2d 1292, also relied on by the majority, the question was whether the victim and the defendant met by mutual consent or only by threat of force. All three victims in the case at bar were minors. Their consent was not an issue and there was no evidence of force or a threat of force against them. The majority's reliance on *Kimbrough* is misplaced.

In *People v. Fuller* (1983), 117 Ill. App. 3d 1026, 454 N.E.2d 334, another case the majority cites, the defense to the charge of unlawful restraint and attempted deviate sexual assault was consent. The appellate court stated that the striking similarity of the other sexual assaults was relevant to the issue of whether a crime was actually committed. Because the victims were minors, consent was not and could not have been a defense in the case at bar. Thus, evidence of the of-

fenses against the other two minors, S.B. and J.C., was not admissible to establish a lack of consent.

In *People v. Tate* (1981), 87 Ill. 2d 134, 429 N.E.2d 470, the defendant argued on review that the evidence of a defense witness' robbery was similar to the robbery with which the defendant was charged and that the defense witness' *modus operandi* was evidence that the defendant's crime was committed by the defense witness and was admissible to exonerate the defendant. The supreme court disagreed and held the witness' *modus operandi* evidence was inadmissible. *Tate* is not on point.

In *People v. Carter* (1981), 98 Ill. App. 3d 720, 424 N.E.2d 367, the defendant was found guilty of indecent liberties with his 11-year-old stepdaughter. At trial the defendant's natural daughter testified, without objection from the defendant, that she also engaged in several acts of sexual intercourse with the defendant. The court held the error of the admission of the testimony of the defendant's natural daughter was waived. *Carter* also is not on point.

In the case at bar, there was no distinctive pattern of criminal behavior by the defendant involving the three minors. Their testimony established a few similarities but their testimony established many dissimilarities in the defendant's conduct as well. E.B., minor No. 1, testified that he went to the defendant and asked the defendant how to build up his body. The defendant told him to eat and exercise properly. The defendant measured various parts of E.B.'s body with a cloth tape measure and recorded the measurements in a yellow pad. The defendant photographed E.B. while E.B. was clothed and while E.B. was nude. The defendant rubbed E.B.'s penis and genitals and photographed and measured E.B.'s erected penis.

Even after S.B., minor No. 2, was being asked leading questions by the assistant State's Attorney, S.B.'s testimony about the defendant's conduct was different than that of E.B.'s, minor No. 1's, testimony about the defendant's conduct. S.B. testified that the defendant told him that he was doing a study of adolescence which involved measuring parts of S.B.'s body, including his genitals. S.B. initially refused but later allowed the defendant to measure his penis and, S.B. testified, "then we masturbated each other." E.B., minor No. 1, did not testify to such conduct. S.B., minor No. 2, testified further that he did not see the defendant record any measurements. This was contrary to E.B.'s testimony that the defendant recorded the measurements. S.B. refused the defendant's request to pose nude for pictures.

The assistant State's Attorney urged that the testimony of J.C.,

minor No. 3, was admissible to establish the defendant's identity. J.C. testified that during the summer of 1982 he had sexual contact with the defendant at least once a week and that the defendant would rub his penis with his hands. The testimony of J.C., minor No. 3, was appreciably different from the testimony of E.B. and S.B., minors Nos. 1 and 2. Contrary to the majority's statement, J.C. did not testify that the defendant measured or photographed any parts of his body while he was clothed or nude or that the defendant requested to do so. S.B., minor No. 2, testified that he and the defendant masturbated each other. Neither E.B. nor J.C., minors Nos. 1 and 3, testified to such conduct by the defendant. Thus, the purported *modus operandi* in the case at bar did not establish the defendant's identity or a pattern of criminal behavior so distinctive that the separate crimes were recognizable as the handiwork of the same wrongdoer. (*People v. Barbour* (1983), 106 Ill. App. 3d 993, 999-1000, 436 N.E.2d 667.) The evidence of the defendant's commission of the sex offenses upon S.B. and J.C., minors Nos. 2 and 3, was prejudicial error and inadmissible and, as in *Barbour* and *People v. Grabbe* (1986), 148 Ill. App. 3d 678, 499 N.E.2d 499, its admission requires reversal and a new trial.

If any doubt yet remained concerning the assistant State's Attorney's purpose in presenting to the jury evidence of the defendant's commission of the offenses upon minors Nos. 2 and 3, that doubt was laid to rest by the assistant State's Attorney's following final closing argument:

"*Those children,* when *they* were fourteen years old did not experience what *they* had gone through two years ago. ***.

Fortunately for you, you have just heard that testimony; fortunately, we don't have to have *those children* come back and tell that humiliating experience *they* have gone through and *they* didn't want to tell *their* parents. *They* didn't want to tell the police officers ***.

[Y]esterday, we heard a complete pattern of a man who would become friends with *certain children* of fourteen and fifteen years of age. He'd get them some form of work. Remember, he's only the clerk, some sort of clerk at the funeral home, yet, he was hiring *these fifteen year olds.* He's keeping that knowledge away from his boss.

*These boys* were not paid by Maloney, but they were paid by Partin. They did not appear at the funeral home when Maloney was there; obviously so Maloney went—wouldn't know about it.

*They* came after wakes, so that would be in the evening, when Maloney was not there, and they said they had work, and

then they'd go upstairs with him. And, when they went upstairs, they were by *themselves.*

Remember at least with *two of the boys,* they said they had known this man for at least one year and known this man for about six or seven years. *They* had grown up to know the man; they were alone, they were in the surrounding aroma of a funeral parlor; these are eighth graders, fourteen and fifteen years old.

*They* were overwhelmed by the surrounding that they used poor judgment, yes, but they were encouraged, brought in, lured by this dirty old man to do what they have testified they have done.

[Defense Counsel]: Objection.

THE COURT: Objection noted.

[Assistant State's Attorney]: Make your own determination what he was. Now, in this society, fortunately, [*eighth*] *graders* have the right, when they do something wrong, not being penalized for the circumstances of it. E.B., S.B., and J.C. [minors Nos. 1, 2 and 3] are not on trial in this thing. I am sure they had better things to do than come here and tell them *what happened to them* two or three years ago. I am sure they have better things to do.

\* \* \*

*They* have no reason to lie.

\* \* \*

It was a humiliating experience to come here and testify. It was a humiliating experience, then because it is such—because I am sure they don't want to go out and brag about it, they didn't tell their mothers, they didn't tell the police. You can accept that what E.B. said was the truth, and when you can accept what J.C. said was the truth, and as for S.B., remember how he said how many times he had been up there, how many times he had been up there and had sexual contact occurred between 1982 and when he left in May of 1983.

\* \* \*

I believe the fact that he used these pictures to show *other fourteen and fifteen year olds,* also comes in when you deliberate this case.

And, I am asking you that you put an end to this. It already is too late, ladies and gentlemen. It is already too late for *those children*; that you find this man guilty; that you sign the forms finding this man guilty, both indecent liberties and child por-

nography and stop this child exploiter. Thank you." (Emphasis added.)

The assistant State's Attorney's final closing argument constituted five pages, the above four pages of which were devoted to the evidence of the offenses upon S.B. and J.C., minors Nos. 2 and 3. The assistant State's Attorney did not argue to the jury that the evidence of the defendant's commission of the offenses upon S.B. and J.C., minors Nos. 2 and 3, established a common scheme, motive, plan, design or the defendant's identification. Nor did the assistant State's Attorney argue that the evidence involving minors Nos. 2 and 3 established *modus operandi*. Instead, the assistant State's Attorney argued to the jury that the evidence of the offenses upon minors Nos. 2 and 3 established the defendant's guilt of the offense upon minor No. 1. It was highly improper for the assistant State's Attorney to have so argued. This evidence was not and could not have been admitted for that purpose. The assistant State's Attorney impermissibly accomplished indirectly what the law prohibited him from accomplishing directly. The assistant State's Attorney improperly presented to the jury evidence of other crimes for which the defendant was not on trial to prove the defendant's propensity to commit the crime for which he was on trial.

The majority states, " '*Modus operandi*' means method of working and refers to a pattern of criminal behavior that is so distinctive that separate crimes are recognizable as the handiwork of the same wrongdoer; it is useful in showing that the accused is the perpetrator of the crime charged," that, "there must be a substantial and meaningful link between the offenses being compared," and, "some distinctive feature not common to most offenses of that type must be present to show *modus operandi*." (156 Ill. App. 3d at 370.) But evidence of *modus operandi* is not admissible simply because it may prove defendant's *modus operandi*. Relevance is the touchstone of admissibility, and defendant's other crimes, even those sharing a common *modus operandi*, are inadmissible unless the State shows that the evidence is probative of a proposition at issue. *People v. Barbour* (1983), 106 Ill. App. 3d 993, 1000, 436 N.E.2d 667.

The majority erroneously concludes, "We find the offenses against the complainants, S.B. and J.C. [minors Nos. 2 and 3] are so substantially similar that they show a common method of procedure and are relevant to prove defendant's *modus operandi*." (156 Ill. App. 3d at 371.) The majority further erroneously concludes that "[d]efendant placed in issue whether a crime was committed and who committed it. We find that the testimony of S.B. and J.C. was probative and relevant as to those issues ***." (156 Ill. App. 3d at 372.) This latter statement

adopts the propensity contention, *i.e.*, that the testimony of S.B. and J.C. was probative to prove that a crime was committed upon E.B. and that the defendant committed it. The majority thereby acknowledges *modus operandi* as an acceptable legal euphemism for propensity to commit crime.

In *People v. Davis* (1984), 130 Ill. App. 3d 41, 473 N.E.2d 387, the robbery victim testified that during the robbery the defendant told her that he had just robbed another man.

This court reversed, stating:

"Under the concepts of a fair and impartial criminal trial, it is fundamental that a defendant, no matter how reprehensible or how great his history of past crimes, is entitled to have his guilt or innocence determined solely with reference to the crime with which he is charged. (*People v. Gregory* (1961), 22 Ill. 2d 601, 603, 177 N.E.2d 120, 122.) Thus, evidence of separate or unrelated crimes for which the defendant is not on trial is inadmissible if relevant merely to establish propensity to commit criminal acts. (*People v. Romero* (1977), 66 Ill. 2d 325, 362 N.E.2d 288.) Such evidence overpersuades the trier of fact, which is likely to convict defendant merely because of feelings he is a bad person deserving punishment rather than on the basis of facts related to the offense for which he is on trial. (*People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238.) Thus, such evidence carries a high risk of prejudice for the criminal defendant." 130 Ill. App. 3d 41, 50, 473 N.E.2d 387.

The majority is also mistaken when it states that the trial court "instructed the jury to consider the testimony only for the limited purpose for which it was admitted, thereby alleviating any potential prejudice." (156 Ill. App. 3d at 372.) The trial court did not so instruct the jury.

The only instruction given by the trial court on the evidence of the S.B. and J.C. offenses was Illinois Pattern Jury Instruction, Criminal, No. 3.14 (2d ed. 1981) (hereinafter IPI Criminal 2d), as follows:

"Evidence has been received that the defendant has been involved in offenses other than that charged in the indictment. This evidence has been received solely on the issue of the defendant's motive, design and knowledge. This evidence may be considered by you only for the limited purpose for which it was conceived."

It was improper for the trial court to give IPI No. 3.14. That instruction told the jury that the evidence of the defendant's commission of the offenses upon S.B. and J.C., minors Nos. 2 and 3, was "received

solely on the issue of the defendant's motive, design and knowledge."

The majority states, "[C]ommon design *** is often relevant to show the motive for the crime charged." (156 Ill. App. 3d at 370.) The majority then erroneously concludes, "[T]he testimony of S.B. and J.C. was properly admitted as evidence of a common design or scheme." (156 Ill. App. 3d at 371.) It is farfetched to suggest that the defendant's motives of sexual gratification with S.B. and J.C. was evidence of his prior motive of sexual gratification with E.B., minor No. 1, for which he was on trial. It is even more strained to suggest that the defendant's knowledge was an issue or to suggest that evidence of the defendant's commission of the S.B. and J.C. offenses established the defendant's knowledge in the E.B. offense. The defendant's "design" was not an issue. IPI Criminal 2d No. 3.14 was not only inappropriate, it was also confusing. The instruction should not have been given. To have done so was reversible error.

To compound the aforementioned errors, the trial judge failed to instruct the jury on what offenses the defendant was on trial and, in reading the instructions to the jury, he failed to read the charges in the indictment. He did not send a copy of the indictment with the other instructions to the jury room during the jury's deliberation. Only guilty and not guilty verdict forms were given to the jury. One verdict returned by the jury was:

"We the jury, find the defendant, Richard Partin, guilty of the offense of child pornography."

The other verdict was:

"We, the jury, find the defendant, Richard Partin, guilty of the offense of indecent liberties with a child."

Each guilty verdict was signed by the foreman and 11 other jurors. Neither guilty verdict identified the particular offense for which the jury found the defendant guilty. The jury was presented evidence of the defendant's commission of indecent liberties and child pornography upon three minors, E.B., S.B. and J.C. The record does not disclose which offenses against which minor the jury found the defendant guilty of committing. Nevertheless, the trial judge sentenced the defendant to 15 years' imprisonment for the E.B. offenses on judgments entered on the jury's guilty verdicts.

A fundamental purpose of the constitutional right of a defendant to be informed of and tried on the nature and cause of an accusation in an indictment is to enable the defendant to plead an acquittal or a conviction thereof as a bar to subsequent proceedings brought against the defendant for the same offense. For the reasons stated, this constitutional right was successfully circumvented in the case at bar.

The fifth amendment to the Constitution of the United States provides, "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb; ***." (U.S. Const., amend. V.) Article 1, section 10, of the Illinois Constitution provides, "[N]o person shall *** be twice put in jeopardy for the same offense." (Ill. Const. 1970, art. I, sec. 10.)

In the case at bar, though the defendant was on trial for the alleged offenses upon E.B., minor No. 1, the assistant State's Attorney successfully presented evidence of the defendant's commission of the offenses upon S.B. and J.C., minors Nos. 2 and 3. The defendant was thereby put to the task of defending against the S.B. and J.C. offenses. He was unsuccessful in so doing. Yet, he is precluded from pleading his unsuccessful efforts as a bar to a subsequent prosecution for the S.B. and J.C. offenses. After imposing the 15-year imprisonment sentence in the case at bar, there remained the S.B., minor No. 2, offenses in indictment No. 84-4410 and the J.C., minor No. 3, offenses in indictment No. 84-4397, even though the defendant had been put to the task of defending against those offenses at the trial of E.B., minor No. 1, and even though the jury had relied on evidence of the defendant's commission of those offenses in reaching the guilty verdicts. The defendant's Federal and State constitutional rights against being twice put in jeopardy for the same offense were thereby thwarted.

When the defendant was later confronted with the S.B. and J.C. indictments, the assistant State's Attorney stated to the trial judge:

> "Your Honor, [for] both of the complaints you had the benefit of hearing both of the victims' [S.B. and J.C., minors Nos. 2 and 3] testimony before the jury."

After having been confronted with evidence of the S.B. and J.C. offenses during his trial for the E.B. offenses, and the jury having found him guilty, for which he received a 15-year imprisonment sentence, the defendant chose not to confront that same evidence a second and third time. He pleaded guilty to the S.B. and J.C. offenses and was additionally sentenced to two 10 years' imprisonment terms.

If the letter of the defendant's constitutional rights was not violated, surely the spirit of the defendant's constitutional rights to be informed of and tried on the nature and cause of the accusation against him, to due process, to fundamental fairness, to a fair trial, and against being twice placed in jeopardy for the same offense was circumvented. For the reasons stated, I would reverse the defendant's conviction and remand the cause for a new trial.